NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
TORMU E. PRALL,                  :
                                 :  Civil Action No. 10-1228 (JBS)
              Plaintiff,         :
                                 :
                                 :
              v.                 :   OPINION
                                 :
CHARLES ELLIS, et al.,           :
                                 :
              Defendants.        :
```

APPEARANCES:

    TORMU E. PRALL, Plaintiff pro se
    #700294B/650739
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey 08625

    CHRISTINE H. KIM, DEPUTY ATTORNEY GENERAL
    STATE OF NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
    25 Market Street, P.O. Box 112
    Trenton, New Jersey 08625
    Counsel for Defendants, Michelle R. Ricci, William J.
    Moliens, Chris Holmes, Jimmy Barnes, James Drumm, Ron
    Wagner, James Keil, Lt. Alaimo, and Ortiz

    JOI LYNNE ORTIZ, ESQ.
    OFFICE OF THE MERCER COUNTY COUNSEL
    McDade Administration Building
    640 South Broad Street, P.O. Box 8068
    Trenton, New Jersey 08650-0068
    Counsel for Defendants, E. Williams, T. Wilkie, Nurse Pete
    S., and John Does 1-25

SIMANDLE, District Judge

    THIS MATTER comes before the Court on the motions of

plaintiff, Tormu E. Prall ("Prall"), for an injunction (Docket

entry no. 81), filed on or about March 16, 2012, and for legal
supplies (Docket entry no. 84), filed on March 26, 2012.
Counsel for Defendants, Jimmy Barnes, James Keil, Michelle
Ricci and Chris Holmes (collectively the "NJSP Defendants"),
filed opposition to Plaintiff's motions.  Recently, Plaintiff
filed a motion for leave to file a second amended Complaint, on
or about September 4, 2012, raising, among other things,
similar allegations as contained in his motions for an
injunction and for legal supplies. (See Docket entry no. 135).
These three motions are being considered on the papers pursuant
to Fed.R.Civ.P. 78.  For the reasons set forth below,
Plaintiff's motion for legal supplies is denied without
prejudice, and his motions to amend his Complaint a second time
and for an injunction are granted in part.

## I.  BACKGROUND

In an Opinion and Order filed on September 23, 2011
(Docket entry nos. 31 and 32), the Honorable Freda L. Wolfson,
U.S.D.J., dismissed without prejudice, pursuant to 28 U.S.C. §§
1915(e)(2)(B)(ii) and 1915A(b)(1), all claims asserted by Prall
in his original and amended Complaints that attempted to
challenge Prall's state court conviction, sentence and/or
extradition.  Likewise, Prall's claims against the Mercer
County Prosecutor defendants, namely, defendants Bocchini and
Galuchie were dismissed.  In addition, the original and amended

Complaints were dismissed without prejudice in their entirety
as against named defendants Sypek, Blair, Hughes, Ganges, Mair,
Blakey and Crowley, because Prall failed to state a viable
claim against these defendants based on more than mere
supervisor liability.  Further, Judge Wolfson dismissed without
prejudice Prall's claims asserting conspiracy, retaliation,
denial of access to the courts, and denial of his First
Amendment right to free exercise of religion.  Prall's claims
asserting deprivation of property, denial of due process based
on his MCU placement and classification, denial of due process
based on false disciplinary charges, denial of equal
protection, denial of his Ninth Amendment right to revolt, and
denial of his rights against self-incrimination and to a
presumption of innocence, and his claims asserted against the
AKFC defendants, were dismissed with prejudice, for failure to
state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1).  However, Judge Wolfson allowed plaintiff's claims
alleging unconstitutional conditions of confinement and
excessive force in violation of his Eighth and Fourteenth
Amendment rights to proceed with respect to the named NJSP
defendants, Michelle R. Ricci; William J. Moliens; Chris
Holmes; Jimmy Barnes; James Drumm; Ron Wagner; James Keil; Lt.
Alaimo; Sgt. Ortiz and Captain Ortiz; and John Roes 1-99, the
unknown correctional officers and SID investigators at NJSP;

and the MCCC defendants, McCall, Williams, Wilkie and the John
Doe MCCC officers.  Plaintiff's claim asserting denial of free
exercise of religion in violation of RLUIPA also were allowed
to proceed, but Judge Wolfson directed that Prall must amend
his Complaint to name the appropriate NJSP defendants with
respect to this claim within 30 days from entry of the
accompanying Order.  Finally, Prall's motion for preliminary
injunctive relief (Docket entry no. 18) was denied, except with
respect to his claim of ongoing physical abuse.  As to that
claim, Judge Wolfson directed that the NJSP defendants, namely,
Michelle R. Ricci, William J. Moliens, Chris Holmes, Jimmy
Barnes, James Drumm, Ron Wagner, James Kiel, Lt. Alaimo, Sgt.
Ortiz and Captain Ortiz, respond in writing to the Court
concerning Prall's allegations of ongoing physical abuse, and
to show cause why an injunction should not be issued against
the defendants. (September 23, 2011 Opinion and Order, Docket
entry nos. 31 and 32).[1]

On October 6, 2011, this action was reassigned to the
undersigned judge.  (Docket entry no. 34).

---

[1]  Plaintiff has filed three motions seeking to vacate the
September 23, 2011 Opinion and Order because it dismissed a
substantial portion of Plaintiff's action.  All three motions
have been denied.  In addition, Plaintiff filed an appeal to the
United States Court of Appeals for the Third Circuit, which was
denied on May 3, 2012, for failure to timely prosecute.

On March 5, 2012, this Court denied Plaintiff's application for a preliminary injunction, but did not dismiss Plaintiff's Eighth Amendment claim of retaliatory and ongoing physical abuse and torture.  (See Opinion and Order docketed at entry nos. 77 and 78).

Thereafter, on or about March 16, 2012, Plaintiff filed this motion for an injunction, alleging that, in addition to the ongoing physical abuse and torture previously pled, on March 10, 2012, New Jersey State Prison ("NJSP") correctional officers, J. Ilardi, McNair, Sergeant J. Lindsey, and two unknown correctional officers, forced Plaintiff to perform oral sex on them.  (Docket entry no. 81 at ¶ 1).

Plaintiff also alleges that before the sexual assault occurred, Officer J. Dominguez and one of the unknown correctional officers "ransacked" Plaintiff's cell and threw away or confiscated Plaintiff's legal documents related to this case.  These officers also left Plaintiff's cell in a "shambles."  (Id., ¶ 2).  Plaintiff further alleges that Sergeant B. Gilmartin and other unknown custody supervisors failed to contact the Special Investigation Division ("SID") about the incident, failed to summon medical staff to provide medical treatment for Plaintiff, and failed to prevent the officers under their command and control from starving Plaintiff from the food served on the prison menu.  (Id., ¶ 3).

5

Plaintiff seeks relief from the "pain and suffering [he] has experienced since his placement in the Management Control Unit," and claims that the physical abuse "has not stopped," and the NJSP defendants "are unable and unwilling to prevent these abuses." (Id., ¶ 4).

On March 26, 2012, Plaintiff filed a motion for supplies. (Docket entry no. 84). Specifically, Plaintiff asks that he be provided with pens, legal size note pads, white envelopes and manilla envelopes so that he can prepare and file legal documents with respect to his case before the Court. Plaintiff also contends that he did not receive the grievance responses, making prison administrative remedies "unavailable." (Docket entry no. 84, Motion at ¶ 1, Declaration at ¶ 1). The Declaration submitted by Plaintiff in support of his motion for supplies further reiterates the charges Plaintiff made concerning the physical abuse, sexual assault, and ransacking of his cell and confiscation/loss of his legal documents, which he had alleged in his motion for injunctive relief (Docket entry no. 81). (See Docket entry no. 84 at ¶ 3).

Plaintiff also alleges that, on March 11, 2012, the SID conducted a "sham" investigation regarding Plaintiff's alleged sexual assault. The SID officers purportedly told Plaintiff that nothing would come of his complaint because "inmates are

scum of the earth and prison officials [are] considered the good guys." (Docket entry no. 84, Decl., ¶ 4).

Plaintiff further alleges that, on March 13, 2012, Disciplinary Hearing Officer ("DHO") C. Ralph approached Plaintiff's cell and told Plaintiff that she was present to adjudicate Plaintiff guilty on disciplinary charges. Plaintiff replied that he had never been served with disciplinary charges. DHO Ralph allegedly told Plaintiff that the named defendants in this civil action were her "good friends" and asked the DHO to sanction Plaintiff to administrative segregation so that Plaintiff would not receive state pay, would receive only 4X6 inch writing paper, be allowed only three showers per week, and would get a state care package of toiletries containing only an ink pen, a small tube of toothpaste and deodorant. (Id., ¶¶ 5 and 6).

Plaintiff alleges that an hour after the DHO came to his cell, he received an adjudication of disciplinary charge form. Plaintiff claims that DHO Ralph lied about what Plaintiff had told her, and sanctioned Plaintiff to 15 days loss of recreation, 15 days detention, 60 days loss of communication, and 90 days administrative segregation. (Id., ¶ 7).

Plaintiff alleges that after he received the disciplinary report, Officer Dominguez and two unknown officers came to Plaintiff's cell, beat Plaintiff to the body, made him ingest

hallucinating drugs, and forced Plaintiff again to perform oral sex on them.  Plaintiff alleges these officers then told Plaintiff that their coworkers don't care about anything the court has to say in this case.  (Id., ¶ 8).

On May 7, 2012, counsel for the NJSP defendants filed opposition to the motions for an injunction and for supplies. (Docket entry no. 103).  In their response, NJSP defendants argue that Plaintiff's motion for an injunction must be denied because he has failed to exhaust his administrative remedies. The NJSP defendants acknowledge that Plaintiff filed grievances regarding legal supplies and the March 10, 2012 incident, but he failed to administratively appeal them.  (Declaration of Brenda A. Hutton ["Hutton Decl."] at Exhibit C, DOC 3, DOC 72, DOC 107, DOC 130, DOC 163, DOC 166, and DOC 190, Docket entry no. 103).  The NJSP defendants further contend that the motion for injunctive relief must be denied because Plaintiff's motion seeks an injunction against non-parties, and because Plaintiff does not make the requisite showing for injunctive relief. (NJSP Defendants' Opposition Brief at pp. 9-13, Docket entry no. 103; see also Docket entry no. 87).

On May 29, 2012, Plaintiff filed a reply to the NJSP defendants' opposition.  (Docket entry no. 110).  Plaintiff argues that the Exhibits A-C, except DOC 190, should be stricken because they are immaterial to the issues.  Plaintiff

also appears to allege that he had exhausted his administrative
appeals, and that the letters he wrote to the Chief
Disciplinary Hearing Office/Central office on appeal were not
submitted by counsel purposely as a cover-up. (Plaintiff's
Reply at ¶¶ 2-4, Docket entry no. 110).

On June 28, 2012, Plaintiff submitted another letter
regarding his motions for an injunction and for supplies.
(Docket entry no. 118). Plaintiff attaches three inmate remedy
forms dated January 12, 2012, January 19, 2012 and March 21,
2011, an a Declaration by Inmate Brian Paladino, "showing the
manipulation used to deny legal supplies." (Docket entry no.
118 at pg. 2). Plaintiff alleges that law library staff and
their supervisors respond to these grievances that the legal
supplies were provided and "side-step [Plaintiff's] complaint
that [he] be required to sign acknowledgment that [he] actually
did receive these items." (Id. at pg. 5). Accordingly,
Plaintiff asks the Court to direct the NJSP defendants to
provide him with supplies as needed and to be able to
demonstrate with physical evidence that the requested supplies
were actually provided to Plaintiff. (Id., pp. 9-11).

II.   DISCUSSION

A.   Motion for Legal Supplies

The right of access to the courts requires that "adequate,
effective, and meaningful" access must be provided inmates who

9

wish to challenge their criminal charge, conviction, or
conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822
(1977).  In other words, prison officials must "give prisoners
a reasonably adequate opportunity to present claimed violations
of fundamental constitutional rights to the Courts."  Id. at
825.  "'[T]he touchstone ... is meaningful access to the
courts.'"  Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir.
1988)(quoting Bounds, 430 U.S. at 823)(internal quotation
omitted).  In Bounds, the Supreme Court held that "the
fundamental constitutional right of access to the courts
requires prison authorities to assist inmates in the
preparation and filing of meaningful legal papers by providing
prisoners with adequate law libraries or adequate assistance
from persons trained in the law."  Bounds, 430 U.S. at 828.

    However, to bring a successful claim, a plaintiff or
prisoner must allege that he sustained an "actual injury" as a
result of the denial of this right.  "[A]n inmate cannot
establish relevant actual injury simply by establishing that
his prison's law library or legal assistance program is subpar
in some theoretical sense."  Lewis v. Casey, 518 U.S. 343, 351
(1996).  The plaintiff must demonstrate the shortcoming of the
legal assistance or law library hindered his efforts to pursue
a legal claim.  Id.  Furthermore, the "injury requirement is
not satisfied by just any type of frustrated legal claim."  Id.

at 354.  The "actual injury" requirement must relate to the plaintiff's inability to attack his sentence or challenge the conditions of his confinement.  "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Id. at 355.

Here, the NJSP defendants provide documentary evidence that Plaintiff was provided legal supplies he requested. Various inmate remedy forms submitted by Plaintiff regarding legal supplies, as well as his prison trust account statement, show that Plaintiff has routinely been provided with legal supplies.  Moreover, given the constant barrage of pleadings, motions and other papers submitted by Plaintiff to this Court, it is readily apparent that Plaintiff does not suffer the lack of adequate legal supplies that would impair his litigating capacity in any way.  Moreover, Plaintiff's submission in reply to his motion for legal supplies offers nothing to refute that he has been provided legal supplies or that he has been impaired in litigating his claims.

Finally, to the extent that Plaintiff is seeking extra legal supplies or expanded use of the prison library, prisons may "reasonably limit the times, places, and manner in which inmates may engage in legal research and preparation of legal papers" so long as the prison does not frustrate the inmates'

11

constitutional right to access the courts.  <u>Gittlemacker v.</u>
<u>Prasse</u>, 428 F.2d 1, 7 (3d Cir. 1970); <u>see</u> <u>also</u> <u>Tucker v. New</u>
<u>York Police Dept.</u>, 408 Fed. Appx. 513, 517 (3d Cir. 2010).
Here, as mentioned above, there is no evidence that the NJSP
defendants deprived Plaintiff of access to the courts, and this
is amply supported by the great number of documents that
Plaintiff has filed, and continues to file, in this case.

Therefore, the Court will deny Plaintiff's motion for
legal supplies for lack of merit.

B.  <u>Motion to File a Second Amended Complaint</u>

As discussed above, on or about September 4, 2012,
Plaintiff filed a second amended Complaint, without leave of
court, most likely in response to the NJSP defendants' response
to his motion for an injunction.  Because Plaintiff is a
prisoner and is proceeding in this matter <u>in</u> <u>forma</u> <u>pauperis</u>,
his second amended Complaint (Docket entry no. 135) is subject
to <u>sua</u> <u>sponte</u> screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B)
and 1915A, to determine whether it should be dismissed as
frivolous or malicious, for failure to state a claim upon which
relief may be granted, or because it seeks monetary relief from
a defendant who is immune from such relief.[2]

---

[2]  The Prison Litigation Reform Act ("PLRA"), Pub. L. No.
104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26,
1996), requires a district court to review a complaint in a civil
action in which a prisoner is proceeding <u>in</u> <u>forma</u> <u>pauperis</u> or

In his second amended Complaint, Plaintiff renews claims
that were dismissed previously, and which were denied

_____

seeks redress against a governmental employee or entity.  The
Court is required to identify cognizable claims and to <u>sua</u> <u>sponte</u>
dismiss any claim that is frivolous, malicious, fails to state a
claim upon which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief.  28 U.S.C. §§
1915(e)(2)(B) and 1915A.  Plaintiff's second amended Complaint is
subject to <u>sua</u> <u>sponte</u> screening for dismissal under both 28
U.S.C. § 1915(e)(2)(B) and § 1915A.

In determining the sufficiency of a pro se complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007)
(following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>see</u> <u>also</u>
<u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal
of a complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>,
556 U.S. 662 (2009).  The Court examined Rule 8(a)(2) of the
Federal Rules of Civil Procedure which provides that a complaint
must contain "a short and plain statement of the claim showing
that the pleader is entitled to relief."  <u>Fed.R.Civ.P.</u> 8(a)(2).
Citing its opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S.
544 (2007) for the proposition that "[a] pleading that offers
'labels and conclusions' or 'a formulaic recitation of the
elements of a cause of action will not do,'" <u>Iqbal</u>, 556 U.S. at
678 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court held
that, to prevent a summary dismissal, a civil complaint must now
allege "sufficient factual matter" to show that the claim is
facially plausible.  This then "allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged."  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d
Cir. 2009)(citing <u>Iqbal</u>, 556 U.S. at 676).  The Supreme Court's
ruling in <u>Iqbal</u> emphasizes that a plaintiff must demonstrate that
the allegations of his complaint are plausible.  <u>See id</u>. at 678-
79; <u>see</u> <u>also</u> <u>Twombly</u>, 505 U.S. at 555, & n. 3; <u>Warren Gen. Hosp.
v.. Amgen Inc.</u>, 643 F.3d 77, 84 (3d Cir. 2011).  "A complaint
must do more than allege the plaintiff's entitlement to relief.
A complaint has to 'show' such an entitlement with its facts."
<u>Fowler</u>, 578 F.3d at 211 (citing <u>Phillips v. County of Allegheny</u>,
515 F.3d 224, 234-35 (3d Cir. 2008).  <u>See also</u> <u>Argueta v. .S
Immigration & Customs Enforcement</u>, 643 F.3d 60, 73 (3d Cir.
2011); <u>Bistrian v. Levi</u>, __ F.3d __, 2012 WL 4335958, *8 (3d Cir.
Sept. 24, 2012)(allegations that are no more than conclusions are
not entitled to the assumption of truth; a court should "look for
well-pled factual allegations, assume their veracity, and then
'determine whether they plausibly give rise to an entitlement to
relief.'")(quoting, <u>Iqbal</u>, 556 U.S. at 679).

reconsideration on several occasions.  (See docket history).
Plaintiff's attempt to re-litigate claims that were dismissed
will not be countenanced yet again.  Plaintiff must resort to
an appeal of the Court's September 23, 2011 Opinion and Order.
Therefore, Plaintiff's attempt to reintroduce claims and
parties in this action by this second amended Complaint will be
denied.[3]  Furthermore, Plaintiff is hereby warned that if he

_____

[3]  For instance, Plaintiff again tries to insert his
challenges to his conviction, sentence, extradition, and
confinement that were previously dismissed.  He renames
defendants, Joseph L. Bocchini, Brian M. Hughes, Kelvin S.
Ganges, Andrew A. Mair, Arthur R. Sypek, Joseph P. Blaney, Sarah
C. Crowley, and Ann Klein defendants (John Does 1-10, Robert L.
Roth, Mahmood Ghahramani, Nydia Santos), who were previously
dismissed from this action.  In addition, Plaintiff's attempt to
further explicate previously dismissed claims, such as those
claims now advanced again under the following headings in his
second Amended Complaint, such as "Unconstitutional
Incarceration" (¶¶ 49-53), "Extradition" (¶¶ 54-57), "Ann Klein"
(¶¶ 58-66), "Retaliation" (¶¶ 67-79, with the exception of those
allegations pertaining to excessive force or physical abuse by
remaining defendants, Sgt. McCall, Officer Wilkie and Officer
Williams at ¶ 72), "Denial of Access to the Courts" (¶¶ 80-86),
"Higher Security Classification" (¶¶ 87-93), will not be allowed
because the allegations fail to state a claim.  To the extent
that Plaintiff's allegations concerning the harsh conditions of
confinement in the MCU at NJSP are legal conclusions without
factual allegations pertaining to Plaintiff, as set forth in
"Management Control Unit" (¶¶ 94-104), they too will be dismissed
without prejudice under Iqbal.  In addition, Plaintiff's claims
against the MCU Review Committee concerning his placement in the
MCU (¶¶ 131-158) were dismissed in the September 23, 2011 Opinion
and Order, and thus, Plaintiff's new allegations, which are
simply reiterations of legal conclusions, will be dismissed.
Plaintiff's allegations complaining of denial of access to the
courts in ¶ 159 of the second amended Complaint also will be
dismissed because Plaintiff has not demonstrated actual injury,
as previously discussed in the September 23, 2011 Opinion.  The
allegations under the heading "Grievance Process" at ¶¶ 161-167
also will be dismissed because Plaintiff is simply challenging
this Court's ruling in the Opinion and Order entered on March 5,
2012, and Plaintiff does not make a showing of any dispositive

attempts again to file a pleading that purports to repeat claims that have already been dismissed or to name defendants against whom all claims have previously been dismissed, this case will be subject to dismissal for vexatious litigation tactics, as the accompanying Order will so provide.

However, Plaintiff does set forth new allegations of physical abuse related to his claim against the NJSP defendants of ongoing torture and physical abuse in violation of his Eighth Amendment right against cruel and unusual punishment. In his proposed second amended Complaint, at heading "Initial Placement" (¶¶ 105-112), Plaintiff mostly reiterates his claim concerning the conditions of his confinement upon his initial placement in the Management Control Unit ("MCU") that were allowed to proceed, pursuant to the September 23, 2011 Opinion and Order issued by Judge Wolfson. Plaintiff names two additional defendants in this claim, Charles Warren,

---

factual matters or controlling decisions of law that were overlooked by the Court in reaching its prior decision. <u>See</u> L.Civ.R. 7.1(i); <u>Dunn v. Reed Group</u>, 2010 U.S. Dist. LEXIS 2438 (D.N.J. Jan. 13, 2010). The allegations under the heading "Claims of Invalidity" at ¶¶ 168-178 simply reiterate Plaintiff's argument that he is a conscientious objector, which is a back door challenge to his conviction and which has been dismissed previously. The Court also will not allow Plaintiff to re-assert his claim of a "Constitutional Right to Revolution" (¶¶ 179-183), because this claim also was dismissed in the September 23, 2011 Opinion and Order. Finally, Plaintiff's last attempt to challenge his conviction, in the section under "Precepts or Religion" (¶¶ 184-194), asserting that his Nation of Gods and Earths religious system of beliefs preclude him from availing himself of the advice of counsel or participating in the criminal justice process, will be dismissed for the same reasons as set forth in the September 23, 2011 Opinion and Order.

Administrator at NJSP, and Vincent B. Wojciechowicz, Special
Investigation Division ("SID") Investigator at NJSP.  (Second
Amended Complaint ("2d Am. Compl.") at ¶¶ 106, 112).  The Court
will allow this amendment to add these two new parties at this
time.

Next, at ¶ 118, Plaintiff alleges that abuse of force
forms or complaints filed by inmates against correctional
officers are forwarded to named NJSP defendants, Ricci, Barnes,
Drumm, Moliens, Keil, Lt. Alaimo and Ortiz, as well as new
defendants, Wojciechowicz, Warren, Suzanne Lawrence, NJSP
Assistant Superintendent, and Kenneth Nelson, NJSP Associate
Administrator.  This allegation appears to allege that these
defendants had personal or actual knowledge concerning Prall's
complaints of ongoing physical abuse.  Accordingly, the Court
will allow this amendment of new parties as well because it
relates to an ongoing claim by Plaintiff.

The most significant new allegations in his second amended
Complaint, which relate to Plaintiff's motion for an
injunction, involves the incident that allegedly occurred on
March 10, 2012.  On that date, Plaintiff alleges that Officers
J. Dominguez and M. Moura ransacked his cell and that Sgt. J.
Lindsey, Officer McNair, Officer J. Ilardi and two unknown
correctional officers forced Plaintiff to perform oral sex on
them.  (2d Am. Compl., ¶ 123).  Plaintiff also alleges that
these officers, Sgt. Gilmartin and unknown nurses and custody

16

supervisors refused to provide Plaintiff medical treatment and covered up the incident until it was reported to the SID on March 11, 2012.  (Id.).  Plaintiff also alleges that he received disciplinary sanctions as a result of the incident in retaliation for Plaintiff pursuing this litigation.  (2d Am. Compl., ¶ 124).  Plaintiff further alleges that on or about March 14, 2012, Officer Dominguez and two unknown officers beat Plaintiff, forced him to ingest hallucinating drugs and then forced him to perform oral sex on them.  The SID conducted investigations of both incidents, but Plaintiff contends that the investigation was a sham.  Id., ¶ 125).  The Court will allow these claims of alleged sexual assault, physical abuse and continuing torture to proceed at this time against the remaining NJSP defendants, as well as the newly named defendants, Officers J. Dominguez, M. Moura, McNair, J. Ilardi, Sgt. J. Lindsey, and the two unknown correctional officers who allegedly took part in the alleged incidents of physical abuse against Plaintiff on March 10, 2012 and March 14, 2012.  In addition, Plaintiff's claims of denial of medical treatment for injuries allegedly sustained during the March 2012 incidents, and the retaliatory disciplinary charges will be allowed to proceed as against these defendants as well.

Plaintiff also generally alleges that "defendants Ricci, Holmes, Barnes, Drumm, Moleins, Keil, Raupp, Stephens, Defilippo [newly added in the second amended Complaint], Ismael

[terminated as a defendant in the September 23, 2011 Opinion and Order], Warren [newly added here], Wojciechowicz [newly added], Nelson [newly added], Lawrence [newly added], Alaimo, Ortiz, Newsom, and unknown named corrections officers tell Prall the pain and suffering will not stop unless he abandons" his "ultimate religious goal ...to receive his just dues, to be treated with dignity and worth of the human person, to receive fair and equal treatment, to search for and obtain the truth," and to have defendants "account for their transgressions."  (2d Am. Compl., ¶¶ 128, 129).  This general allegation fails to state a claim and will be dismissed accordingly under the Iqbal standard.  See fn. 2, supra.

        Finally, in his second amended Complaint, Plaintiff alleges that he is being denied legal services because he must submit a request to visit the law library.  He attaches letters dated February 21, 2012, May 2, 2012 and July 12, 2012 from the NJDOC Ombudsman, but these letters do not tend to support Plaintiff's general allegation of denial of legal services.  Accordingly, this claim (¶¶ 195-196) will be dismissed for failure to state a claim.  See fn. 2, supra.

C.   Motion for Injunction

        To secure the extraordinary relief of a preliminary injunction or TRO, plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result

in irreparable harm to the defendants]; and (4) granting the injunction is in the public interest." Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir. 1998), cert. denied, 526 U.S. 1130 (1999)(as to a preliminary injunction); see also Ballas v. Tedesco, 41 F. Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. Council of Alt. Political Parties v. Hook, 121 F.3d 876, 879 (3d Cir. 1997); see also Brown v. Beard, 445 Fed. Appx. 453, 456 (3d Cir. Sept. 20, 2011); Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187 (3d Cir. 1990). The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a likelihood of success, to obtain a permanent injunction. See University of Texas v. Camenisch, 451 U.S. 390, 392 (1981).

Here, the NJSP defendants first argue that an injunction should not issue because the individuals whose conduct he is seeking to enjoin are not named as defendants in this action. See Ball v. Famiglio, 396 Fed. Appx. 836, 838 (3d Cir. Oct. 7, 2010). Moreover, defendants argue that Plaintiff has not alleged any facts to show that the named NJSP defendants were aware of the allegations concerning the March 10, 2012 "ransacking" of his cell and the alleged sexual assault, the March 11, 2012 "sham" investigation, or the March 13, 2012

19

alleged assault on Plaintiff by unknown officers who allegedly beat Plaintiff, forced hallucinating drugs on him and forced him to perform oral sex.

Since the date Plaintiff first filed his motion for an injunction, he has filed a second amended Complaint which, among other things, seeks to add claims regarding a sexual assault and physical abuse against new defendants, as well as the remaining NJSP defendants, that relate to his motion for an injunction.  As discussed above, this Court has determined that this new claim may proceed at this time against the new defendants.  Therefore, the NJSP defendants' argument that an injunction should not issue because the individuals whose conduct Plaintiff is seeking to enjoin are not named as defendants in this action is rendered moot.  Plaintiff also overcomes the remaining NJSP defendants' argument that Plaintiff has not shown that the remaining NJSP defendants were aware of, or had actual knowledge of, the March 2012 incidents of physical and sexual abuse by alleging actual knowledge in his second amended Complaint.  (See, e.g., 2d Am. Compl., ¶ 118).

Thus, Plaintiff's allegations in his second amended Complaint concerning the March 2012 incidents of physical and sexual abuse in the MCU, if true, may be sufficient at this time to satisfy the first requirement for injunctive relief, that is, that Plaintiff may be likely to succeed on the merits.

Additionally, such allegations of physical harm and sexual abuse also demonstrate that Plaintiff may be subject to irreparable harm.  Further, to the extent that the allegations of physical and sexual abuse by the correctional officers may be true, as alleged, granting an injunction would be in the public interest and would not likely result in irreparable harm to defendants because such conduct by the defendants is unlawful.

However, before the Court can grant a preliminary injunction on ex parte allegations, it is appropriate to compel the NJSP defendants, including the newly added parties, to respond promptly to Plaintiff's new allegations concerning th March 2012 incidents.  Accordingly, the Court will direct the NJSP defendants, including the newly added defendants, to respond in writing to this Court, within thirty (30) days from the date the accompanying Order is issued, as to Plaintiff's allegations of ongoing physical and sexual abuse, in particular, the March 2012 incidents.


III.  <u>CONCLUSION</u>

Therefore, for the reasons set forth above, Plaintiff's motion for legal supplies (Docket entry no. 84) will be denied without prejudice.  Plaintiff's motion to amend his Complaint a second time (Docket entry no. 135) will be granted in part. Finally, as to Plaintiff's motion for an injunction (Docket

entry no. 81), the Court will direct the remaining NJSP
defendants, as well as the newly added defendants, to respond
in writing to this Court within thirty (30) days from the date
of entry of the accompanying Order, concerning Plaintiff's new
allegations of physical and sexual abuse in March 2012, and to
show cause in writing why an injunction should not be issued
against the remaining defendants in this regard.  An
appropriate order follows.


                                  **s/ Jerome B. Simandle**
                                 JEROME B. SIMANDLE, Chief Judge
                                 United States District Court

Dated:  **December 21, 2012**