<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**


TORMU E. PRALL,                          :
                                         :   Civil Action No. 10-1228 (JBS)
              Plaintiff,                 :
                                         :
                                         :
              v.                         :   **OPINION**
                                         :
CHARLES ELLIS, et al.,                   :
                                         :
              Defendants.                :


**APPEARANCES:**

        TORMU E. PRALL, Plaintiff <u>pro</u> <u>se</u>
        #700294B/650739
        New Jersey State Prison
        P.O. Box 861
        Trenton, New Jersey 08625

        CHRISTINE H. KIM, ESQ.
        STATE OF NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
        25 Market Street, P.O. Box 112
        Trenton, New Jersey 08625
        Counsel for Defendants, Michelle R. Ricci, William J.
        Moliens, Chris Holmes, Jimmy Barnes, James Drumm, Ron
        Wagner, James Keil, Lt. Alaimo, and Ortiz

        JOI LYNNE ORTIZ, ESQ.
        OFFICE OF THE MERCER COUNTY COUNSEL
        McDade Administration Building
        640 South Broad Street, P.O. Box 8068
        Trenton, New Jersey 08650-0068
        Counsel for Defendants, E. Williams, T. Wilkie, Nurse Pete
        S., and John Does 1-25

**SIMANDLE,** Chief Judge

        THIS MATTER comes before the Court on the motion of New

Jersey State Prison ("NJSP") defendants, Jimmy Barnes, James

Keil, Michelle Ricci, Chris Holmes, William Moleins, James Drumm,

Lt. Alaimo and Ortiz, (hereinafter referred to as the "NJSP defendants"), to dismiss this action and/or for summary judgment (Docket entry no. 85), and by way of motion and cross-motion of the Plaintiff, Tormu E. Prall, for summary judgment and discovery requests (Docket entry no. 92).  These motions are being considered on the papers pursuant to Fed.R.Civ.P. 78.  For the reasons set forth below, the motions will be denied in part and granted in part.

I.   BACKGROUND

A.  Procedural History

On or about March 8, 2010, Plaintiff filed a civil Complaint, pursuant to 42 U.S.C. § 1983, raising claims of constitutional violations.  (Docket entry no. 1).  On July 1, 2010, Plaintiff filed an amended Complaint.  (Docket entry no. 5).  This case, however, was administratively terminated on August 16, 2010, because Plaintiff had not paid the filing fee and was subject to a three strikes preclusion under 28 U.S.C. § 1915(g).  (Docket entry nos. 10, 11).  Plaintiff appealed the administrative termination, and on April 28, 2011, the United States Court of Appeals for the Third Circuit vacated the dismissal and remanded the matter with instructions to grant Plaintiff's in forma pauperis application.  (Docket entry no. 16).

2

After remand, in an Opinion and Order filed on September 23, 2011 (Docket entry nos. 31 and 32), the Honorable Freda L. Wolfson, U.S.D.J., dismissed without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), all claims asserted by Plaintiff in his original and amended Complaints that attempted to challenge Plaintiff's state court conviction, sentence and/or extradition.  Likewise, Plaintiff's claims against the Mercer County Prosecutor defendants, namely, defendants Bocchini and Galuchie were dismissed.  In addition, the original and amended Complaints were dismissed without prejudice in their entirety as against named defendants Sypek, Blair, Hughes, Ganges, Mair, Blakey and Crowley, because Plaintiff failed to state a viable claim against these defendants based on more than mere supervisor liability.  Further, Judge Wolfson dismissed without prejudice Plaintiff's claims asserting conspiracy, retaliation, denial of access to the courts, and denial of his First Amendment right to free exercise of religion. Plaintiff's claims asserting deprivation of property, denial of due process based on his Management Control Unit ("MCU") placement and classification, denial of due process based on false disciplinary charges, denial of equal protection, denial of his Ninth Amendment right to revolt, and denial of his rights against self-incrimination and to a presumption of innocence, and his claims asserted against the Ann Klein Forensic Center

("AKFC") defendants, were dismissed with prejudice, for failure
to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1).  However, Judge Wolfson allowed Plaintiff's claims
alleging unconstitutional conditions of confinement and excessive
force in violation of his Eighth and Fourteenth Amendment rights
to proceed with respect to the named NJSP defendants, Michelle R.
Ricci; William J. Moliens; Chris Holmes; Jimmy Barnes; James
Drumm; Ron Wagner; James Keil; Lt. Alaimo; Sgt. Ortiz and Captain
Ortiz; and John Roes 1-99, the unknown correctional officers and
Special Investigations Division ("SID") investigators at NJSP;
and the Mercer County Correctional Center ("MCCC") defendants,
McCall, Williams, Wilkie and the John Doe MCCC officers.
Plaintiff's claim asserting denial of free exercise of religion
in violation of Religious Land Use and Institutionalized Persons
Act ("RLUIPA") also was allowed to proceed, but Judge Wolfson
directed that Plaintiff must amend his Complaint to name the
appropriate NJSP defendants with respect to this claim within 30
days from entry of the accompanying Order.  Finally, Plaintiff's
motion for preliminary injunctive relief (Docket entry no. 18)
was denied, except with respect to his claim of ongoing physical
abuse.  As to that claim, Judge Wolfson directed that the NJSP
defendants, namely, Michelle R. Ricci, William J. Moliens, Chris
Holmes, Jimmy Barnes, James Drumm, Ron Wagner, James Kiel, Lt.
Alaimo, Sgt. Ortiz and Captain Ortiz, respond in writing to the

4

Court concerning Plaintiff's allegations of ongoing physical abuse, and to show cause why an injunction should not be issued against the defendants.  (September 23, 2011 Opinion and Order, Docket entry nos. 31 and 32).[1]

On October 6, 2011, this action was reassigned to this Court.  (Docket entry no. 34).

On March 5, 2012, this Court denied Plaintiff's application for a preliminary injunction, but did not dismiss Plaintiff's Eighth Amendment claim of retaliatory and ongoing physical abuse and torture.[2]  (See Opinion and Order docketed at entry nos. 77 and 78).

Thereafter, on or about March 16, 2012, Plaintiff filed another motion for an injunction, alleging that, in addition to the ongoing physical abuse and torture previously pled, on March 10, 2012, New Jersey State Prison ("NJSP") correctional officers, J. Ilardi, McNair, Sergeant J. Lindsey, and two unknown correctional officers, forced Plaintiff to perform oral sex on them.  (Docket entry no. 81 at ¶ 1).  In his motion, Plaintiff

_____

[1]  Plaintiff has filed three motions seeking to vacate the September 23, 2011 Opinion and Order because it dismissed a substantial portion of Plaintiff's action.  All three motions have been denied.  In addition, Plaintiff filed an appeal to the United States Court of Appeals for the Third Circuit, which was denied on May 3, 2012, for failure to timely prosecute.

[2]  The Court notes that Plaintiff's RLUIPA claim has not been properly amended pursuant to the September 23, 2011 Opinion and Order, and therefore, at this time, such claim is not pending in this action.

also alleged that before the sexual assault occurred, Officer J. Dominguez and one of the unknown correctional officers "ransacked" Plaintiff's cell and threw away or confiscated Plaintiff's legal documents related to this case.  These officers also left Plaintiff's cell in a "shambles."  (Id., ¶ 2). Plaintiff further alleged that Sergeant B. Gilmartin and other unknown custody supervisors failed to contact the Special Investigation Division ("SID") about the incident, failed to summon medical staff to provide medical treatment for Plaintiff, and failed to prevent the officers under their command and control from starving Plaintiff from the food served on the prison menu.  (Id., ¶ 3).  In sum, Plaintiff alleged that, since his placement in the Management Control Unit, the physical abuse "has not stopped," and the NJSP defendants "are unable and unwilling to prevent these abuses."  (Id., ¶ 4).

On March 26, 2012, Plaintiff filed a motion for supplies. (Docket entry no. 84).  While, Plaintiff principally asked that he be provided with pens, legal size note pads, white envelopes and manilla envelopes so that he can prepare and file legal documents with respect to his case before the Court, he also argued that he did not receive the grievance responses, making

prison administrative remedies "unavailable."  (Docket entry no. 84, Motion at ¶ 1, Declaration at ¶ 1).[3]

---

[3]  The Declaration submitted by Plaintiff in support of his motion for supplies further reiterates the charges Plaintiff made concerning the physical abuse, sexual assault, and ransacking of his cell and confiscation/loss of his legal documents, which he had alleged in his motion for injunctive relief (Docket entry no. 81).  (See Docket entry no. 84 at ¶ 3).  Plaintiff also alleged that, on March 11, 2012, the SID conducted a "sham" investigation regarding Plaintiff's alleged sexual assault.  The SID officers purportedly told Plaintiff that nothing would come of his complaint because "inmates are scum of the earth and prison officials [are] considered the good guys."  (Docket entry no. 84, Decl., ¶ 4).  Plaintiff further alleged that, on March 13, 2012, Disciplinary Hearing Officer ("DHO") C. Ralph approached Plaintiff's cell and told Plaintiff that she was present to adjudicate Plaintiff guilty on disciplinary charges.  Plaintiff replied that he had never been served with disciplinary charges.  DHO Ralph allegedly told Plaintiff that the named defendants in this civil action were her "good friends" and asked the DHO to sanction Plaintiff to administrative segregation so that Plaintiff would not receive state pay, would receive only 4X6 inch writing paper, be allowed only three showers per week, and would get a state care package of toiletries containing only an ink pen, a small tube of toothpaste and deodorant.  (Id., ¶¶ 5 and 6).  Plaintiff also alleged that an hour after the DHO came to his cell, he received an adjudication of disciplinary charge form.  Plaintiff claimed that DHO Ralph lied about what Plaintiff had told her, and sanctioned Plaintiff to 15 days loss of recreation, 15 days detention, 60 days loss of communication, and 90 days administrative segregation.  (Id., ¶ 7).  Plaintiff further alleged that after he received the disciplinary report, Officer Dominguez and two unknown officers came to Plaintiff's cell, beat Plaintiff to the body, made him ingest hallucinating drugs, and forced Plaintiff again to perform oral sex on them.  These officers then told Plaintiff that their coworkers don't care about anything the court has to say in this case.  (Id., ¶ 8).  On May 29, 2012, Plaintiff filed a reply to the NJSP defendants' opposition to his motion for supplies.  (Docket entry no. 110).  Plaintiff argued that he had exhausted his administrative appeals, and that the letters he wrote to the Chief Disciplinary Hearing Office/Central office on appeal were not submitted by counsel purposely as a cover-up.  (Plaintiff's Reply at ¶¶ 2-4, Docket entry no. 110).

Following the Court's denial of Plaintiff's motion for a preliminary injunction, on March 30, 2012, the NJSP defendants filed a motion to dismiss the action and/or for summary judgment.[4]  (Docket entry no. 85).  Plaintiff filed an opposition to the NJSP defendants' motion, and his own cross motion for summary judgment on or about April 18, 2012.  (Docket entry nos. 91, 92).  The NJSP defendants filed a reply letter brief on April 30, 2012.  (Docket entry no. 99).

Thereafter, on or about September 4, 2012, Plaintiff filed a second amended Complaint without leave of court.  (Docket entry no. 135).  In this amendment, Plaintiff attempts to re-introduce claims that were previously dismissed, add new parties, and add new claims regarding his allegations of physical abuse.  Namely, the new claims include the allegations raised in his second motion for an injunction and motion for supplies, in which he alleged that on March 10, 2012, new defendants, Officers J. Dominguez and M. Moura ransacked his cell and that Sgt. J. Lindsey, Officer McNair, Officer J. Ilardi and two unknown correctional officers forced Plaintiff to perform oral sex on them.  (2d Am. Compl., ¶ 123).  Plaintiff also alleged that these

---

[4]   The initial motion was filed on behalf of NJSP defendants, Jimmy Barnes, James Keil, Michelle Ricci, and Chris Holmes.  On April 23, 2012, NJSP defendants, William Moleins, James Drumm, and Lt. Alaimo asked to join the other NJSP defendants' motion.  (Docket entry no. 94).  On July 12, 2012, NJSP defendant Ortiz also asked to join in the motion for summary judgment.  (Docket entry no. 127).

officers, Sgt. Gilmartin and unknown nurses and custody supervisors refused to provide Plaintiff medical treatment and covered up the incident until it was reported to the SID on March 11, 2012. (Id.). Plaintiff also alleged that he received disciplinary sanctions as a result of the incident in retaliation for Plaintiff pursuing this litigation. (2d Am. Compl., ¶ 124). Plaintiff further alleged that on or about March 14, 2012, Officer Dominguez and two unknown officers beat Plaintiff, forced him to ingest hallucinating drugs and then forced him to perform oral sex on them. The SID conducted investigations of both incidents, but Plaintiff contends that the investigation was a sham. Id., ¶ 125).

In an Opinion and Order entered on December 21, 2012, this Court denied Plaintiff's motion for legal supplies (Docket entry no. 84), granted in part Plaintiff's application to file a second amended Complaint[5] (Docket entry no. 135), and directed that the

_____

[5]   The Court allowed only those claims of alleged sexual assault, physical abuse and continuing torture, regarding the March 2012 incidents, as well as the claims alleging denial of medical treatment for injuries allegedly sustained during the March 2012 incidents, and the retaliatory disciplinary charges stemming from those incidents, to proceed against the remaining NJSP defendants and the newly named defendants, Officers J. Dominguez, M. Moura, McNair, J. Ilardi, Sgt. J. Lindsey, and the two unknown correctional officers who allegedly took part in the alleged incidents of physical abuse against Plaintiff on March 10, 2012 and March 14, 2012, and Charles Warren, Administrator at NJSP, Vincent B. Wojciechowicz; Special Investigation Division ("SID") Investigator at NJSP; Suzanne Lawrence, NJSP Assistant Superintendent; and Kenneth Nelson, NJSP Associate Administrator. .   In addition, Plaintiff's claims of will be allowed to proceed

NJSP defendants, as well as the newly added defendants, respond in writing to this Court within thirty (30) days from the date of entry of the Order, concerning Plaintiff's new allegations of physical and sexual abuse in March 2012, as alleged in Plaintiff's motion for an injunction (Docket entry no. 81) and the second amended Complaint.  (See Docket entry nos. 163 & 164). This Court observes that these new claims and defendants are not part of these motions for summary judgment, and will be excluded from consideration herein.

On November 15, 2012, an Amended Scheduling Order was entered in this matter extending pretrial factual discovery to February 4, 2013.  (Docket entry no. 156).  On November 16, 2012, a Consent Order was entered regarding the conduct of Plaintiff's deposition, which is yet to be taken.  (Docket entry no. 155).

B.  Statement of Facts

1.  *Allegations in Pleadings*

In his Complaint and amended Complaint, Plaintiff asserts that he is being subjected to unconstitutional treatment and conditions of confinement at the MCU at NJSP in violation of his rights under the Eighth Amendment.  First, Prall alleges that, on or about February 5, 2010, when he was first placed in the MCU,

_____

as against these defendants as well.  All other claims re-asserted in the second amended Complaint were dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

he was put under camera watch for three weeks and given only a
filthy gown and a dirty mattress on the floor in his cell during
this time.  (Amended Complaint at ¶ 63, Docket entry no. 5).  He
states that the floor and walls in his cell were filthy, covered
in blood and feces.  He had complained about the conditions and
that his skin was itching from not taking showers.  No remedy was
provided.  (Id.).  After the three weeks expired, Plaintiff was
placed in a regular cell in the MCU.

Plaintiff also alleges that he was and still is subjected to
torture and physical abuse at least once a week in the MCU at
NJSP.  (Id., ¶ 76).  Plaintiff alleges that the NJSP defendants
ordered defendant Newsom and other unnamed correctional officers
to choke Plaintiff until he loses consciousness, slap his face,
stomp on his toes and fingers, spray mace in his eyes, nose,
throat and on his genital and rectal areas.  Plaintiff also
alleges that he has been poked with needles; kicked and beat with
blackjacks, fists and boots; electrocuted with devices that burn
holes in rugs; homosexually touched in his genital area and
buttocks; and threatened that he will be "man-handled" and
sodomized by a stick.  (Id., ¶¶ 63, 73).

2.  *NJSP Defendants' Statement of Material Facts*

The NJSP defendants set forth the inmate grievance procedure
for inmates at NJSP as follows.  In accordance with N.J.A.C.
10A:8-1.1 to 10A:8-3.6, the NJSP has adopted Inmate Handbooks

that set forth the rights and privileges of its inmates at NJSP.
The Inmate Handbook also sets forth the inmate grievance
procedure at NJSP. (Declaration of Brenda A. Hutton, ¶¶ 3, 5 at
Docket entry no. 37-2, and Exhibit B at Docket entry no. 37-3).

In particular, Inmate Remedy System Forms ("IRSF") are made
available to NJSP inmates within their housing units, at the
prison law library, and from the unit social workers. (Hutton
Decl., ¶ 6 and Ex. B). Once an inmate completes the IRSF and
submits it, the IRSF is given to the appropriate staff person for
a response. When the inmate receives a response to his IRSF, he
may then appeal the response. After an administrative response
is provided to the inmate's appeal, the inmate's administrative
remedies have been exhausted. (Hutton Decl., ¶¶ 7-9 and Ex. B).

The NJSP defendants state that Plaintiff has filed numerous
IRSFs, and attaches them to their response at Exhibit C to
Hutton's Declaration. (Docket entry no. 37-3). Out of the
numerous IRSFs filed by Plaintiff, he briefly mentions being
"physically abused" by NJSP officers only twice in April 2010.
(See Hutton Decl., Ex. C at DOC3 and DOC6). For instance, on
April 6, 2010, Plaintiff complained about the lack of supplies
for his legal work and that he was placed in MCU to hinder his
legal capabilities and to physically and mentally abuse him.
(Id. at DOC3). Then, on April 15, 2010, Plaintiff filed an IRSF
alleging that he was physically abused when he complained about

12

the showers and other conditions at the MCU.  (Id. at DOC6).  The NJSP defendants show that Plaintiff has failed to administratively appeal the April 6, 2010 and April 15, 2010 IRSFs.  (Id., Ex. C, DOC3, DOC6).

As to the claim regarding denial of medical care, the NJSP defendants note that an inmate must submit a sick call request by completing a Health Services Request Form, Form MR-007.  (Hutton Decl. at ¶ 12).  The NJSP defendants also state that Plaintiff has filed only two Health Services Request Forms from 2010 to the present time; one requesting Benadryl and the other seeking an appointment with an optometrist.  (Id., Ex. D, MED102-MED103).  There are no medical request forms for any alleged injuries due to the conditions of confinement or from excessive use of force and physical abuse.

Further, review of Plaintiff's medical records reveal that Plaintiff consistently received medical treatment.  (Hutton Decl., Ex. E).  Plaintiff's NJSP medical records do not disclose any medical treatment for the alleged physical abuse that Plaintiff claims he is continually experiencing, such as his allegations of choking, marks on his face, injured toes, fingers, eyes, nose, throat, genital area, needle marks, and/or signs of electrocutions.  (Hutton Decl., Ex. E).  In addition, NJSP defendants show that Plaintiff underwent several mental health evaluations that did not reveal any psychological problems related to being housed in the MCU and purportedly being

subjected to physical abuse.  (Hutton Decl., Ex. E at MED22-24, MED26-31, MED38-44, MED65, MED69-71, MED78-80, MED84, MED91, MED96, and MED98).  Moreover, Plaintiff underwent several medical/physical examinations that did not disclose any physical injuries consistent with Plaintiff's allegations of physical abuse.  In fact, there are no notations in Plaintiff's medical records at NJSP that he had any physical injuries attributable to physical abuse, and physical examinations and observations made during 2010 and early 2011 did not reveal any physical injuries.  (Hutton Decl., Ex. E at MED5, MED32-34, MED73-76, MED82-83).  For instance, on February 29, 2010, Plaintiff underwent a physical evaluation that revealed everything was normal.  (Id., Ex. E, MED32-MED34).  Consequently, there is no medical documentation that Plaintiff has suffered from the excessive use of force or physical abuse as alleged.

The NJSP defendants state that when an incident of physical abuse occurs or is suspected to have happened, the Special Investigations Division ("SID") will conduct an investigation. (See Declaration of Vincent B. Wojciechowicz, ¶ 4 and N.J.A.C. 10A:21-5.1(a)).  After an investigation is completed, the SID will prepare written reports regarding any incident brought to its attention.  N.J.A.C. 10A:21-8.5(a).  A search of the SID records reveals no incidents between Plaintiff and NJSP corrections officers from February 5, 2010 to September 28, 2010 that led to an SID investigation.  (Wojciechowicz Decl., ¶ 5).

However, on September 28, 2010, the SID did receive a copy
of Plaintiff's complaints, in particular, his Amended Complaint
(Docket entry no. 5), in this action alleging physical abuse.
(Wojciechowicz Decl., ¶ 6).   Consequently, SID Investigator
Shawn Harrison conducted an investigation of Plaintiff's
allegations. (Wojciechowicz Decl., ¶ 7).  On September 30, 2011,
the SID requested NJSP medical staff to conduct a physical
examination of Plaintiff to determine if there were any injuries
from the alleged physical abuse, but Plaintiff refused to leave
his cell and participate in the medical assessment.
(Wojciechowicz Decl., ¶¶ 8, 9).  Therefore, NJSP medical staff,
namely, Neal West, R.N., completed a visual assessment of
Plaintiff that revealed no signs of physical injury or distress.
(Wojciechowicz Decl., ¶¶ 10, 11, 13).

As to Plaintiff's claims concerning the conditions of his
confinement, the administrative record shows that Plaintiff filed
IRSFs regarding clothing, sneakers and recreational issues, but
he did not mention any issues concerning a filthy gown, dirty
mattress, or blood and feces on the floors and walls of his cell.
(Hutton Decl., Ex. C, DOC5, DOC10, DOC12, DOC14, DOC26, DOC28,
DOC42, DOC74).  The NJSP defendants state that, upon arrival at
NJSP, a new inmate is issued the following items: (1) two full
sets of clothing that includes two pairs of khaki pants, two
khaki shirts, two t-shirt, and two pairs of boxer shorts, two
pairs of socks and one pair of sneakers; (2) personal hygiene

items including one toothpaste, one soap, toilet paper, one deodorant, and one comb; (3) two linen sheets; and (4) one blanket. (Declaration of Major Nya Booth ["Booth Decl."], at ¶¶ 5-7). The record shows that upon his arrival at NJSP from the MCCC, Plaintiff received the above items. (Id., ¶ 8).

The NJSP defendants also state that NJSP policy makes MCU inmates responsible for maintaining their cells in a safe and sanitary manner. (Id., ¶ 9). MCU inmates are provided with soap and cleaning supplies (i.e., cleanser, mixture of disinfectant and water, toilet bowl brush, dust pan, broom, mop and a mop bucket) once a week. (Id., ¶ 10). MCU inmates also are given deodorant, toothpaste, soap, toilet paper, pen and paper once a month on the fifteenth. (Id., ¶ 11). Further, MCU inmates are provided clean linens once a week and a clean blanket every six months. (Id., ¶ 12). Therefore, Plaintiff had the opportunity and supplies to keep himself and his cell sanitary. (Id., ¶¶ 13, 15).

3. *Plaintiff's Opposition*

Plaintiff provided his own "statement of facts"[6] in opposition to the NJSP defendants' motion to dismiss and/or for summary judgment. (Docket entry no. 91). Plaintiff contends that he filed grievances on each and every issue but did not receive responses to all of them. (Docket entry no. 91 at ¶ 3).

_____

[6] Plaintiff's "Statement of Facts" are mostly legal arguments and conclusory statements.

He further alleges that the NJSP defendants control the log
listing and disposition of grievances as well as health services
requests, and that the forms and assessment reports for MED 35,
39, 45 and 58 are missing from the record.  These documents
purportedly show that Plaintiff was treated with pain medication
and hydrocerin cream to be applied to his feet after having been
made to walk barefoot in blood and excrement covered floors.
(Id., ¶¶ 4, 5).  Plaintiff argues that the NJSP defendants have
manipulated the grievance process by not processing, delivering
or responding to grievances filed by inmates.

     In support of this allegation, Plaintiff provides a
declaration by another MCU inmate, Brian Paladino, which
Plaintiff attaches to his cross motion for summary judgment.
(Docket entry no. 92-2).  In his declaration, Paladino alleges
that he has suffered physical attacks by Sgt. Newsom and other
correctional officers at NJSP, and filed multiple grievances that
were never addressed.  He also alleges that he was not given
hygiene and cleaning supplies.  Paladino further alleges that
inmates don't receive responses to their grievances because
"staff cover up for their colleagues and don't process the
forms," []"officers have a habit of trashing grievances, loudly
labeling inmates as snitches for either filing grievances or for
the ones trashed," staff makes "mistakes and giving one inmate's
mail to the other," staff "placing responses to grievances in
inmates files without notifying inmates of the disposition, and

17

the mailroom mishandling responses from reaching their
destination." (Paladino Declaration at ¶ 8, Docket entry no. 92-
2). Paladino further confirms that Plaintiff had sent a health
service request form to Paladino to give to medical personnel
between March 10 and 11, 2012, because medical personnel were not
permitted to stop at Plaintiff's cell. Plaintiff had asked
Paladino to give the form to a nurse dispensing medication in the
MCU regarding the alleged March 2012 sexual assault incident,
which Paladino says the nurse discarded. (Id., ¶ 10).

Plaintiff alleges that when he arrived at NJSP, he was
placed in a dry cell for three weeks. Under N.J.A.C. 10A:4-
9.17(d), an inmate may be placed in a dry cell if he damages or
destroys plumbing fixtures or floods his cell. Plaintiff alleges
that he had not committed these acts to support his confinement
in a dry cell. (Docket entry no. 91 at ¶ 11). Plaintiff
maintains that the mattress provided him in the dry cell smelled
of urine and had blood and feces stains. He was given a dirty
gown and no cleaning supplies to clean the blood and feces on the
floor and walls of his cell. He further alleges that he was
unable to sleep due to the stench and itching from not being able
to take a shower. His feet were cracked and peeling. (Id., ¶¶
12, 13). Plaintiff alleges that defendant Ricci must approve a
restrictive placement in a dry cell. He further alleges that all
of the named NJSP defendants were aware of the conditions in the

18

dry cell because they toured the housing unit where Plaintiff was confined. (Id., ¶ 14).

Plaintiff alleges that he received only one pair of clothing. He was not given a towel, washcloth, pillow, thermals, boots, knit hat or personal hygiene items. Plaintiff was provided with toothpaste, soap, toilet paper, deodorant, sheets and a blanket through the help of other inmates. (Id., ¶ 20). It was only after he contacted the Ombudsman that Plaintiff was provided the rest of his clothing in "March 2009."[7] (Id.).

Plaintiff now alleges that from March 2010 through March 2012, he was not allowed to shower or clean his living quarters because he only had one set of clothing. He claims that this allegation is supported by MED25 and MED29. (Id., ¶ 21).

Plaintiff further alleges that medical staff have "manipulated his complaints" of torture, and he refers to MED 26, 29, 38 and 42. The Court notes that these documents reference progress notes taken during Plaintiff's mental health visits, and mention Plaintiff's complaints about laser rays, maggots in his wall and spikes in his feet, which were made by Plaintiff without distress or agitation. Plaintiff also states that MED 35, 39, 45 and 58 show that he was prescribed pain medication for being beaten as well as cream for his feet, but these health services

---

[7] The Court presumes that this date is in error because Plaintiff was not placed in the NJSP MCU until February 2010. Accordingly, it would appear that the appropriate date is March 2010.

forms and assessments are missing from the record.  (Id., ¶¶ 39, 40).

    With his cross-motion for summary judgment, Plaintiff also seeks leave to photograph the dry cell where he had been confined for three weeks, the non-congregate MCU exercise cages, the congregate MCU exercise yard, and his MCU living quarters and his sneakers.  Plaintiff also seeks leave to serve five sets of 25 questions on each NJSP defendant, and to tape record the depositions in this case at the expense of the NJSP defendants. (Docket entry no. 92 at ¶¶ 2, 3 and 4).

## II.  DISCUSSION

### A.  Motion to Dismiss Standard

    In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must look to the face of the Complaint and decide, taking all of the allegations of fact as true and construing them in a light most favorable to Plaintiff, whether the allegations state any legal claim, and "determine whether, under any reasonable reading of the complaint, the plaintiff is entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)(citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)).  For Plaintiff to proceed with his claims, his pleadings must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662 (2009)

(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007));

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir.009).

B.   <u>Summary Judgment Standard</u>

     Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."   <u>Fed.R.Civ.P.</u>
56(a).   A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving party."
<u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).   A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law.   <u>Id</u>.   Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment.   <u>Id</u>.   The Court will view any evidence in favor
of the nonmoving party and extend any reasonable favorable
inferences to be drawn from that evidence to that party.   <u>Hunt v.</u>
<u>Cromartie</u>, 526 U.S. 541, 552 (1999).   <u>See also</u> <u>Scott v. Harris</u>,
550 U.S. 372, 378 (2007)(The district court must "view the facts
and draw reasonable inferences in the light most favorable to the
party opposing the summary judgment motion.").

C.   <u>Failure to Exhaust Administrative Remedies</u>

     The NJSP Defendants first argue that Plaintiff failed to
exhaust his administrative remedies, as required by the Prisoner
Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which would
bar this Court from undertaking further review of Plaintiff's
claims.   The PLRA provides that "[n]o action shall be brought

21

with respect to prison conditions under section 1983 of this
title, or any other Federal law, by a prisoner confined in any
jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted.  42
U.S.C. § 1997e(a).  "[T]he PLRA exhaustion requirement requires
proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006);
Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010)(citing
Woodford).  That means a prisoner must show compliance with his
prison's specific grievance procedures prior to filing suit.
Drippe, 604 F.3d at 781.  This stricture applies to claims of
deliberate indifference to medical needs, such as the claims
Plaintiff raises here.  See, e.g., Watts v. Herbik, 364 Fed.
Appx. 723, 724 (3d Cir. 2010)(affirming dismissal of deliberate
indifference claim where plaintiff failed to exhaust
administrative remedies).  "The availability of administrative
remedies to a prisoner is a question of law."  Mitchell v. Horn,
318 F.3d 523, 529 (3d Cir. 2003)(quoting Ray v. Kertes, 285 F.3d
287, 291 (3d Cir. 2002).

In support of their motion, the NJSP Defendants have
submitted the declaration of Brenda A. Hutton, the Executive
Assistant II at NJSP, which provides the various administrative
and medical records pertaining to Plaintiff.  The evidence
provided by the NJSP Defendants also establishes some basic facts
regarding the NJSP administrative grievance procedures, and
Plaintiff's treatment and conduct during his incarceration.

For instance, NJSP has an established grievance system for prisoners requesting administrative remedies pertaining to the conditions of incarceration.  Inmates are provided with IRSFs that allow them to address any concerns, problems, and complaints.  Once an inmate completes the form, he submits it to the appropriate staff person for a response.  There is generally a thirty-day processing period, and once the inmate receives a response to his IRSF, he may appeal the response.  After a response is provided to the inmate's appeal, his remedies are exhausted.

The NJSP Defendants also show by evidence that Plaintiff had filed numerous grievances since his arrival at NJSP, but only two of these grievances pertain Plaintiff's allegations of physical abuse, albeit, the alleged physical abuse was not the primary complaint in the grievance.  In the April 6, 2010 Administrative Remedy Form, Plaintiff complains about a lack of legal supplies, and generally alleged that custody staff physically and mentally abused him.  Plaintiff did not describe the physical abuse, name the abuser or provide a date when the alleged abuse occurred. (Hutton Decl., Ex. C, DOC3).  In an April 15, 2010 form, Plaintiff again makes a general allegation of physical abuse without identifying any details of the incident, such as the officer involved or the date and place of the alleged incident. (Id., Ex. C at DOC6).  The NJSP Defendants further point out that

23

Plaintiff did not file an administrative appeal from the April 6, 2010 and April 15, 2010 grievances.  (Id.).

Furthermore, Plaintiff never filed any grievances regarding his allegations of ongoing physical abuse and torture (i.e., the choking, slapping, mace spraying, electrocution, needle poking, etc.), and he never filed grievances regarding the conditions of his confinement while he was housed in the dry cell for the first three weeks of confinement in the MCU.  The NJSP Defendants acknowledge that Plaintiff filed grievances about clothing, sneakers and recreational issues, but none of these IRSFs mentioned the allegations concerning a filthy mattress, gown or feces and blood on the walls and floors of his cell.  (Id., Ex. C at DOC5, DOC10, DOC12, DOC14, DOC26, DOC28, DOC42, and DOC74).  Finally, Plaintiff has never filed a grievance concerning a denial of medical care, or that he was in need of medical care due to excessive use of force or physical abuse.  (Id.).

Plaintiff attempts to overcome the defendants' argument by alleging that he filed grievances but these were not produced, are missing or were thrown away.  In support of his claim, he submits the affidavit of another inmate who alleges that grievance forms are routinely discarded, misplaced or ignored.  There is no evidential support for that inmate's hearsay allegations.  Further, the only allegation by inmate Paladino pertaining to Plaintiff involves the recent March 2012 incidents of sexual abuse, which are not the subject of this motion.

Having carefully reviewed the documentary evidence provided by the NJSP Defendants, the Court finds that these records indicate that not only did Plaintiff fail to exhaust his remedies, he did not use the process at all to attempt to remedy the issues that form the basis of his Section 1983 claims, with the exception of the recent March 2012 incidents.  While the Plaintiff attempts to refute the NJSP Defendants' evidence, his allegations, even the declaration by another inmate, are simply accusations unsupported by documentary proof.  Moreover, Plaintiff's many allegations are contradictory.  For instance, he alleges that he never received more than one set of clothing for two years, yet he admits at one point, in March 2010, that he received his clothing allotment after complaining to the Ombudsman.

Therefore, because Plaintiff fails to proffer any evidence contrary to the NJSP Defendants documentary evidence, the Court finds that no genuine issue of material fact exists as to whether Plaintiff has exhausted his administrative remedies with regard to his remaining Eighth Amendment claims against the NJSP Defendants, with the exception of the most recent allegations in his second amended Complaint concerning March 2012 incidents of sexual and physical abuse.  Thus, summary judgment in the NJSP Defendants' favor is appropriate with regard to all Eighth Amendment claims preceding the newly alleged March 2012 claims of Eighth Amendment violations.

D.   Eighth Amendment Conditions Claim

     Moreover, even if Plaintiff could demonstrate that he had
exhausted his administrative remedies, his Eighth Amendment
claims fail to state cognizable constitutional deprivations and
are lacking in merit.

     "The Eighth Amendment's prohibition on 'cruel and unusual
punishment' ... imposes on [prison officials] a duty to provide
'humane conditions of confinement.'"  Betts v. New Castle Youth
Dev., 621 F.3d 249, 256 (3d Cir. 2010)(quoting Farmer v. Brennan,
511 U.S. 825, 832 (1994)), cert. denied, 131 S.Ct. 1614 (2011).
That is, "prison officials must ensure that inmates receive
adequate food, clothing, shelter, and medical care, and must
'take reasonable measures to guarantee the safety of the
inmates.'"  Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526–27
(1984)).  For an alleged deprivation to rise to the level of an
Eighth Amendment violation, it must "result in the denial of 'the
minimal civilized measure of life's necessities.'"  Id. at 835
(quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1982)).

     To state a claim under the Eighth Amendment, an inmate must
allege both an objective and a subjective component.  Wilson v.
Seiter, 501 U.S. 294, 298 (1991); Counterman v. Warren Cnty.
Corr. Fac., 176 Fed. Appx. 234, 238 (3d Cir. 2006).  The
objective component requires that the deprivation sustained by a
prisoner be sufficiently serious because only "extreme
deprivations" are sufficient to make out an Eighth Amendment

26

claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  A plaintiff
may satisfy the objective component of a conditions-of-
confinement claim if he can show that the conditions alleged,
either alone or in combination, deprive him of "the minimal
civilized measure of life's necessities," such as adequate food,
clothing, shelter, sanitation, medical care, and personal safety.
Rhodes, 452 U.S. at 347-48.  However, while the Eighth Amendment
directs that convicted prisoners not be subjected to cruel and
unusual punishment, "the Constitution does not mandate
comfortable prisons."  Rhodes, 452 U.S. at 349.  To the extent
that certain conditions are only "restrictive" or "harsh," they
are merely part of the penalty that criminal offenders pay for
their offenses against society.  Id. at 347.

     The subjective component requires that the state actor have
acted with "deliberate indifference," a state of mind equivalent
to a reckless disregard of a known risk of harm.  See Farmer v.
Brennan, 511 U.S. at 835 (1994); Wilson, 501 U.S. at 303.  This
component may be fulfilled by demonstrating that prison officials
knew of such substandard conditions and "acted or failed to act
with deliberate indifference to a substantial risk of harm to
inmate health or safety."  Ingalls v. Florio, 968 F. Supp. 193,
198 (D.N.J. 1997).

     Here, Plaintiff alleges that for three weeks he was housed
in a dry cell with a dirty mattress, filthy gown and blood and
feces on the floor and walls of his cell.  He further complains

27

that his housing at the MCU deprives him of a surrounding sanitary environment, and that he has not been provided with the standard clothing, toiletries and cleaning products to keep himself and his own cell clean.  However, as the record plainly confirms, Plaintiff was not subjected to cruel conditions of confinement and deprived of necessities.  For instance, the record confirms that upon his arrival at NJSP, Plaintiff was provided with two full sets of clothing, personal hygiene items including toothpaste, soap, deodorant, toilet paper and a comb, as well as sheets for his bed and a blanket.  (Booth Decl., ¶ 8). Further, the record confirms that Plaintiff was given cleaning supplies once a week to keep his cell clean, clean bed sheets once a week, and a clean blanket every six months.  (Id., ¶¶ 9, 10 and 12).  Personal hygiene items are provided on or about the fifteenth of each month.  (Id., ¶ 11).

In addition, Plaintiff's medical records at NJSP do not reveal any evidence of physical abuse or excessive force used against Plaintiff for which medical treatment was required. There are no records that Plaintiff requested medical care that was denied.  The NJSP Defendants provided an extensive medical record of 105 pages that reveals no allegations or complaints of physical abuse, maltreatment, or excessive force that would require medical care.

While several notations in Plaintiff's medical records confirm that Plaintiff was under constant watch and that he

complained of being deprived of showers and clean clothes, (see e.g., MED22), there is no evidence, other than Plaintiff's allegations in his amended pleadings, that Plaintiff was confined under the conditions he alleges.  Moreover, even if this Court were to accept Plaintiff's allegations as true, the duration of these alleged conditions was so short and non-persistent, that they fail to rise to the level of a constitutional deprivation under the Eighth Amendment.  Accordingly, the NJSP Defendants are entitled to summary judgment with respect Plaintiff's Eighth Amendment conditions claim.

E.   Eighth Amendment Denial of Medical Care Claim

The Eighth Amendment proscription against cruel and unusual punishment also requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to

29

medical needs amounts to an Eighth Amendment violation only if
those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9
(1992).  The Third Circuit has defined a serious medical need as:
(1) "one that has been diagnosed by a physician as requiring
treatment;" (2) "one that is so obvious that a lay person would
recognize the necessity for a doctor's attention;" or (3) one for
which "the denial of treatment would result in the unnecessary
and wanton infliction of pain" or "a life-long handicap or
permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d
Cir. 2003)(internal quotations and citations omitted); see also
Monmouth County Correctional Institutional Inmates v. Lanzaro,
834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006
(1988).

The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  See Natale, 318 F.3d at 582 (finding
deliberate indifference requires proof that the official knew of
and disregarded an excessive risk to inmate health or safety).
"Deliberate indifference" is more than mere malpractice or
negligence; it is a state of mind equivalent to reckless
disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S.
825, 837-38 (1994).  Furthermore, a prisoner's subjective
dissatisfaction with his medical care does not in itself indicate
deliberate indifference.  Andrews v. Camden County, 95 F. Supp.2d
217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145

(D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment."  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician

31

capable of evaluating the need for such treatment"); Durmer v.
O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897
F.2d 103 (3d Cir. 1990).

Here, Plaintiff's general allegations that the NJSP
Defendants were deliberately indifferent to his medical needs in
violation of his Eighth Amendment rights are without merit.  The
substantial medical records provided the Court (under seal)
confirm that Plaintiff received ongoing and continuous medical
mental health care.  There are no records that Plaintiff
requested treatment for injuries consistent with the use of
excessive force or physical abuse that went unaddressed.
Moreover, Plaintiff points to MED35, 39, 45 and 58 as proof that
he suffered skin irritations to his feet, but this Court notes
that these records confirm that Plaintiff was given treatment, in
the form of creams and Ibuprofen, for his medical complaints.
Consequently, there is absolutely no evidence in the substantial
record provided that would support an Eighth Amendment denial of
medical care claim, and therefore, the NJSP Defendants are
entitled to summary judgment on this claim as well.

F.   Eighth Amendment Excessive Force and Physical Abuse Claim

The Eighth Amendment further prohibits prison officials from
unnecessarily and wantonly inflicting pain in a manner that
offends contemporary standards of decency.  See Hudson v.
McMillian, 503 U.S.1, 8 (1992); Rhodes v. Chapman, 452 U.S. 337,
347 (1981)(The Eighth Amendment prohibits conditions which

involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment).  Id. at 347.  When reviewing an Eighth Amendment excessive force claim, the district court must determine whether the "force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson, 503 U.S. at 6.

The Supreme Court outlined the factors to be used in making this determination in Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The factors used to determine whether force was used in "good faith" or "maliciously and sadistically," include: (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response." Whitley v. Albers, 475 U.S. at 321.  See also Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000); Freeman v. Department of Corrections, 447 Fed. Appx. 385, 388 (3d Cir. Oct. 6, 2011).

In this case, the NJSP Defendants argue that Plaintiff can prove neither the subjective or objective components of an Eighth Amendment excessive force claim.  Plaintiff makes the general allegation that he has been subjected to physical abuse on a weekly basis since he was confined to the MCU at NJSP.

Nevertheless, Plaintiff fails to identify any details of the alleged abuse and has never reported the allegations of physical abuse and use of excessive force to NJSP officials for investigation.  In short, Plaintiff merely alleges that he is being physically abused without offering any proof.

As discussed previously, Plaintiff's medical records clearly reveals that Plaintiff never received or needed medical attention or treatment for the alleged weekly physical abuse.  The medical records reveal that Plaintiff received full physical and mental health examinations that showed him to be normal and healthy without any indications of physical abuse.  (Hutton Decl., Ex. E at MED32-34, MED22-24, MED26-31, MED38-44, MED65, MED69-71, MED78-80, MED84, MED91, MED96, and MED98).  Further, there were no requests for medical care consistent with allegations of physical abuse.  Finally, after this action was instituted and an investigation of Plaintiff's complaints of physical torture was undertaken, Plaintiff refused to cooperate and would not participate in a physical assessment by RN West.  (See Wojciechowicz Decl., ¶ 11).  RN West thus conducted a visual assessment of Plaintiff and concluded that Plaintiff exhibited no signs of injuries or distress.  (Id., ¶ 13).

Therefore, except for Plaintiff's bald and unsupported allegations of weekly physical abuse and use of excessive force, there are no records or signs that Plaintiff was subjected to physical abuse and torture by the NJSP Defendants.  Moreover, it

appears that Plaintiff has consciously thwarted any attempts to document or investigate the veracity of his claims of physical abuse. Accordingly, the NJSP Defendants will be granted summary judgment on this claim, except with respect to Plaintiff's recently added allegations of physical and sexual abuse in March 2012, which is the subject of his second amended Complaint, see the Opinion filed herein on December 21, 2012, and otherwise not part of this motion for summary judgment.

G.   Remaining Arguments

Because this Court has determined that the NJSP Defendants are entitled to summary judgment as to all of Plaintiff's remaining claims against them (with the exception of the newly added and unanswered Eighth Amendment claims of excessive force and physical abuse relating to March 2012 incidents, that are not the subject of the NJSP Defendants' motion for summary judgment), the remaining arguments by the NJSP Defendants, namely the Eleventh Amendment immunity claim and the qualified immunity claim, need not be reached for discussion.

Moreover, because this Court has determined that the NJSP Defendants are entitled to partial summary judgment, Plaintiff's cross-motion for summary judgment will be denied for lack of merit. Moreover, Plaintiff's motions for leave to photograph certain areas of the MCU, to serve extra interrogatories on the NJSP defendants and to tape record depositions of the NJSP

Defendants, will be denied as moot because the claims for which such discovery requests pertain have been dismissed.

### III.   <u>CONCLUSION</u>

Therefore, for the reasons set forth above, the NJSP Defendants' motion to dismiss and/or for summary judgment (Docket entry no. 85) will be granted in part, Plaintiff's cross-motion for summary judgment and motions for discovery (Docket entry no. 92) will be denied.   An appropriate order follows.


**s/ Jerome B. Simandle**
JEROME B. SIMANDLE, Chief Judge
United States District Court

Dated:  December 26, 2012