NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| TORMU E. PRALL, | : | |
| | : | |
| Plaintiff, | : | Civil No. 10-1228 |
| | : | (JBS/KMW) |
| v. | : | |
| | : | |
| MICHELLE R. RICCI, et al., | : | |
| | : | **OPINION** |
| Defendants. | : | |

**APPEARANCES:**

Tormu E. Prall, *Pro Se*
700294B/650739
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Sarah G. Crowley
Office of Mercer County Counsel
640 South Broad Street
Trenton, NJ 08650
Attorney for Defendants Williams, Wilkie, Nurse Pete S./Peter Schroeder

**SIMANDLE, Chief Judge**

On August 29, 2013, Defendants Williams, Wilkie, Peter Schroeder and John Doe Mercer County Corrections Center Officers ("the County Defendants") filed a motion for summary judgment (Docket Items 219-223). On September 30, 2013, Plaintiff filed opposition to the County Defendants' motion (Docket Item 233) and his own motion

for summary judgment (Docket Item 232). On October 4, 2013, the County Defendants filed a reply to Plaintiff's opposition and opposition to Plaintiff's motion (Docket Item 235).

This Court has reviewed the motion papers and supporting documentation.  For the reasons set forth below, the County Defendants' motion for summary judgment will be granted; Plaintiff's motion for summary judgment will be denied.

## BACKGROUND

### A. Statement of Facts

As supported by the Certifications filed by the County Defendants (see Docket Item 219 and attachments), on December 12, 2009, Plaintiff, known as a dangerous and assaultive inmate, was housed at the Mercer County Correctional Center ("MCCC"). In violation of MCCC policy, he was accused of removing a typewriter ribbon from the typewriter he had been using during his recreation time. When MCCC staff discovered the violation, a Code was called. Plaintiff was asked to return the ribbon and responded with verbal threats and curses. Plaintiff then refused to be handcuffed and stated that anyone who came into his cell would be assaulted or killed. See Certification of Correctional Officer Wilke, Docket Item 219-8 at ¶ 7.

The situation escalated and a Code for additional assistance was called. Four corrections officers entered Plaintiff's cell and

Plaintiff immediately became combative and assaultive. He was taken to the floor, cuffed, and removed from the cell by the officers, who then retrieved the typewriting ribbon. *See id.* at ¶ 8.

Following the incident, Plaintiff was taken to the medical department and cleared by medical staff.  Plaintiff made no indication that he needed medical care or was in any pain, and no outward signs of injury were present. Because Plaintiff began making grandiose statements about being "the Lord" and pontificating on the injustices of the world, he was referred to the mental health unit. Since his visit to the medical unit that day and subsequently, mental health, after December 15, 2009, Plaintiff was not seen in medical or mental health again. *See* Certification of Nurse Polyak, Docket Item 222 at ¶¶ 5-7.

Plaintiff's complaint, amended complaint, and second amended complaint, filed pursuant to 42 U.S.C. § 1983, allege that the County Defendants, Williams, Wilke, and Nurse Pete (Schroeder), used excessive force against him and were deliberately indifferent to his medical needs, in violation of the Eighth Amendment.[1] He asserts that the typewriter ribbon incident was "a pretextual disturbance . . . staged to justify attacking Prall." (Docket Item 232, Plaintiff's Brief at p. 6).

___

[1] All additional claims against county defendants and employees have been dismissed by Opinion and Order dated September 23, 2011 (Docket Items 31, 32).

B.    **The County Defendants' Motion**

In their motion for summary judgment currently before this Court, the County Defendants argue that they are entitled to summary judgment because Plaintiff has not met the legal standard for claims based on use of excessive force. (Brief, Docket Item 223, p. 16). The County Defendants argue that proper policy was followed throughout the incident; that Plaintiff was aware of the policy utilized when his cell was entered because he was provided an MCCC Inmate Handbook; and that Plaintiff was aware of the library policy concerning typewriter ribbon because he was provided an MCCC Inmate Handbook and because he was a frequent grievance filer concerning law library policy. The County Defendants argue that the appropriate actions were taken in light of the Plaintiff's reactions (refusing to be handcuffed, becoming combative and verbally threatening) and history (known as an assaultive and combative inmate).

Further, the County Defendants argue that they were not deliberately indifferent to Plaintiff's medical needs because Plaintiff did not complain of any medical needs, and regardless, Plaintiff was examined by medical and mental health personnel.

C.    **Plaintiff's Motion for Summary Judgment**

Plaintiff's motion (Docket Item 232) focuses on the time of the incident, as listed by an officer in an incident report. Plaintiff asserts that, "There is no way that Officer DiMattia and Sergeant

4

J. McCall could have asked Prall to finish up his typing at 11:40 a.m., since his 9:30 to 10:30 a.m. recreation had long expired some seventy minutes earlier." (Docket Item 232, Motion for Summary Judgment, at p. 5). He further asserts that the County Defendants' Statement of Facts in the Brief supporting the County Defendants' motion for summary judgment is "nothing more than creative self-contradictions plainly tailored to contrive issues of fact not borne out by the record." (*Id.*). Again, Plaintiff asserts that the "attack" on him was pretextual. Therefore, he argues, "the amount of force that was used had nothing to do with maintaining or restoring discipline" and he is entitled to summary judgment (*Id.* at p. 7).

## DISCUSSION

### A. Standard of Review

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if, based on the evidence in the record, a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the suit. *Id.* A court will view evidence in the light most favorable to the non-moving party and draw "all justifiable inferences" in that party's favor. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). *See also Scott v. Harris*,

550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

B.    **Eighth Amendment Standard**

The Eighth Amendment prohibits punishments of convicted prisoners that are "cruel and unusual." *Jackson v. Danberg*, 594 F.3d 210, 216 (3d Cir. 2010). An Eighth Amendment claim includes an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The subjective component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson*, 501 U.S. at 297). "What is necessary to establish an 'unnecessary and wanton infliction of pain,' ... varies according to the nature of the alleged constitutional violation." *Hudson*, 503 U.S. at 5 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).

1.    **Excessive Force Claims**

Whether force used against a prisoner was excessive depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In assessing whether the force used was appropriate, the Court considers the need for the application of force and its relationship to the amount of force used as well as the injury inflicted. *See id.*

In *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992), the Supreme Court found that unlike conditions of confinement claims and deliberate indifference claims, which both require conduct exceeding a certain threshold of depravity, claims of excessive force need not meet any particular threshold of harm. *Id.* at 9. This is because, "in the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Id.* (emphasis added). The Supreme Court added that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* But this is because not every malevolent touch constitutes a capricious infliction of pain. As indicated by the cases the Supreme Court cites for this proposition, the court was distinguishing excessive force from mere battery, which applies to

7

any unwanted touching, even that which does inflict pain. *See Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

The Third Circuit also explained, "the Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002) (citations omitted). "Requiring objective or independent proof of minor or significant injury would ignore this teaching and place protection from injury, instead of protection from wanton force, at the hub of the Eighth Amendment." *Id.; see also Brooks v. Kyler*, 204 F.3d 102, 108 (3d Cir. 2000); *Rhodes v. Robinson*, 612 F.2d 766, 771 (3d Cir. 1979). In each case, courts must examine the necessity of the force in addition to the extent of the injury to determine whether the force was used maliciously to cause harm. *See Smith*, 293 F.3d at 649 ("[D]e minimis injuries do not necessarily establish de minimis force.").

According to MCCC policy, when it is necessary to use force to control inmates, the minimum force possible will be used. (Certification of Bearden, ¶ 7.) The MCCC utilizes a "Use of Force Continuum" reactive to the inmate's actions. (*Id.*) Readily identifiable "codes" are used to aid staff when problems arise (*Id.*). On the day in question, officers responded to Code 1 (anticipation of problem developing and alerting officers to standby) (Certification of Fioravanti, ¶ 7). When Plaintiff refused to return

8

the typewriter ribbon and threatened officers, the code system escalated to Code 6 (need assistance). (*Id.*). During the incident in question, after Code 6 was called, the officers entered Plaintiff's cell, handcuffed him, and removed the typewriter ribbon. (*Id.*).

Plaintiff states in his Declaration that he was "put in a choke hold . . . and [they] held my hands and stepped on both of my feet with their boots." He further states that he was "placed in leg shackles and handcuffed . . . behind the back, and then walked . . . to the infirmary." (Plaintiff's Declaration, Docket Item 232, p. 4).

Here, according to the record provided, the Court finds that even assuming Plaintiff's version of the facts, that while force was used, as a matter of law there was no *excessive* use of force to violate the Constitution. The record reflects that the policies and procedures of MCCC were appropriately carried out, and considering Plaintiff's reaction to the officers and Plaintiff's history as a volatile inmate, the officers acted appropriately in restraining Plaintiff. The certifications of the various officers involved in the incident support this conclusion. *See* Certification of Ellis, Docket Item 219-5 at ¶ 6; Certification of Bearden, Docket Item 219-6 at ¶ 8; Certification of Wilke, Docket Item 219-8 at ¶ 6; Certification of Williams, Docket Item 219-9 at ¶ 6; Certification

9

of Fioravanti, Docket Item 219-7 at ¶ 6. Further, this Court finds that, in accordance with the law cited above, in examining the necessity of the force and extent of force used, the force was not used "maliciously" or "sadistically" to cause harm; rather, no reasonable fact-finder could conclude that the officers responded unreasonably given the severity of the situation.

This Court finds that in the context of Plaintiff's claim alleging use of excessive force, there are no genuine issues of material fact as to what occurred on December 12, 2009. The precise time when Plaintiff finished his typing during recreation period is immaterial to this claim. Plaintiff's assertion that "a pretextual disturbance was staged to justify attacking Prall and false reports were written to cover up the incident . . . . establishes that force was applied maliciously and sadistically for the very purpose of causing harm" is a conclusory allegation unsupported by the record. (*See* Plaintiff's Brief, Docket Item 232, p. 6). Summary judgment must be granted to the County Defendants on this claim.

    2.   **<u>Medical Care Claims</u>**

Where the claim is one alleging the failure to provide medical care, as alleged by Plaintiff here, the core inquiry is whether the defendants' actions constituted "deliberate indifference" to an inmate's serious medical needs. *See Estelle*, 429 U.S. at 104. Deliberate indifference is shown if a defendant "intentionally

den[ies] or delay[s] access to medical care or intentionally interfere[es] with the treatment once prescribed." *Id.* at 104–05. Furthermore, deliberate indifference can be manifested by "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). Moreover, "[s]hort of absolute denial, if necessary medical treatment is ... delayed for non-medical reasons, a case of deliberate indifference has been made out." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (alterations in original) (internal quotation marks and citation omitted). A medical need is serious if it "has been diagnosed by a physician as requiring treatment or ... so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (internal quotation marks and citation omitted). However, "[a]llegations of medical malpractice or mere disagreement as to the proper medical treatment are insufficient to establish a constitutional violation." *Szemple v. Univ. of Med. & Dentistry*, 451 F. App'x 187, 191 (3d Cir. 2011) (citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)).

    In this case, it is undisputed that Plaintiff was taken to the medical department after the incident. Plaintiff admits this fact in the Declaration attached to his motion (Docket Item 232, Declaration, pp. 4-5). However, while the record reflects that

Plaintiff had no complaints of medical issues at the medical department, Plaintiff alleges that he complained of pain and soreness to his body, a loud ringing in his ear, and extreme weakness (*Id.* at p. 5), but that medical records were falsified to cover up his complaints (*Id.* at pp. 6-7).

Despite Plaintiff's allegation that he did complain of medical issues after the incident, this Court finds that this does not warrant a material fact in order to preclude summary judgment. It is well-established that a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Further, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. *See Scott v. Harris*, 550 U.S. 373, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Here, the record provided demonstrates proof after proof that Plaintiff was taken to medical, examined, and cleared by medical staff with no signs of injury. *See* Certification of Wilke, Docket Item 219-8, ¶ 8; Certification of Williams, Docket Item 219-9, ¶ 8;

Certification of Bearden, Docket Item 219-6, ¶ 11; Certification of Fioravanti, Docket Item 219-7, ¶ 7; Certification of Ellis, Docket Item 219-5, ¶ 9. In addition, the certification of medical staff, which attaches Plaintiff's medical records, demonstrates that Plaintiff did not have any medical complaints after the incident. *See* Certification of Nurse Polyak, Docket Item 222 (stating at ¶ 5: "Plaintiff made no indication that he had any medical need, request, or complaint of pain/injury whatsoever. Specifically, Plaintiff did not complain of any muscle pain, head injury, or ringing in his ear(s)." And stating at ¶ 6: "Based upon my examination, Plaintiff had no obvious, outward sign of injury." And providing medical records at Exhibit A).

Even assuming that Plaintiff made the complaints as he suggests in his motion for summary judgment, Plaintiff's medical care claim would fail, as the evidence in the record (and to some extent, Plaintiff's own admission) demonstrates that he was seen in medical and examined and cleared. Had Plaintiff made the complaints that he asserts concerning his medical care, his allegation of improper care still does not rise to the level of a constitutional violation under the Eighth Amendment. At most, Plaintiff's allegations would suggest only his personal dissatisfaction with the level of medical care, which is not actionable under the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994)(describing deliberate difference

13

as "somewhere between the poles of negligence at one end and purpose or knowledge at the other"); *Christy v. Robinson*, 216 F. Supp.2d 398, 413-14 (D.N.J. 2002)(stating that courts "will generally not find deliberate indifference when some level of medical care has been offered to the inmate"); *Andrews v. Camden County*, 95 F. Supp.2d 217, 228 (D.N.J. 2000)(stating a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference).

Therefore, this Court finds no material facts in dispute and holds that as a matter of Eighth Amendment law, there is no triable issue concerning Plaintiff's medical care claim. Summary judgment must be granted to the County Defendants on this claim.

## CONCLUSION

For the foregoing reasons, the County Defendants' Motion for Summary Judgment (Docket Item 219) is granted, and Plaintiff's Motion for Summary Judgment (Docket Item 232) is denied. An appropriate Order accompanies this Opinion.

                                **s/ Jerome B. Simandle**
                                JEROME B. SIMANDLE
                                Chief U.S. District Judge

Date **March 25, 2014**