IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

TORMU E. PRALL,

                    Plaintiff,

        v.

JOSEPH L. BOCCHINI, JR., et
al.,

                    Defendants.

---

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 10-1228 (JBS/KMW)

**OPINION**

APPEARANCES:

TORMU E. PRALL, Plaintiff <u>pro se</u>
#700294B/650739
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

LUCY E. FRITZ, DEPUTY ATTORNEY GENERAL
STATE OF NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
25 Market Street, P.O. Box 112
Trenton, New Jersey 08625
Attorney for Defendants Jimmy Barnes, Jeffrey S. Chiesa, J.
Dominguez, James Drumm, Chris Holmes, J. Ilardi, Suzanne
Lawrence, J. Lindsey, Officer McNair, William J. Moleins,
Officer Moura, Kenneth Nelsen, Ruben Ortiz, Michelle R. Ricci,
Charles Warren, and Vincent Wojciechowicz

TIMOTHY K. SAIA, ESQ.
MORGAN MELHUISH ABRUTYN
651 W. Mt. Pleasant Avenue, Suite 200
Livingston, New Jersey 07039-1673
Attorney for Defendant Kevin Newsom

JOHN M. BOWENS, ESQ.
SCHENCK, PRICE, SMITH & KING, LLP.
220 Park Avenue
P.O. Box 991
Florham Park, New Jersey 07932
Attorney for Defendant James Keil

WILLIAM P. FLAHIVE, ESQ.
24 Arnett Avenue, Suite 103
Lambertville, New Jersey 08530
Attorney for Defendant Stephen Alaimo

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

       This matter comes before the Court on the motion of

Defendants Jimmy Barnes, Jeffrey S. Chiesa, J. Dominguez, James

Drumm, Chris Holmes, J. Ilardi, Suzanne Lawrence, J. Lindsey,

Officer McNair, William J. Moleins, Officer Moura, Kenneth

Nelsen, Ruben Ortiz, Michelle R. Ricci, Charles Warren, and

Vincent Wojciechowicz ("DOC Defendants") for Summary Judgment

(Docket Entry 298); Defendant Kevin Newsom's Motion for Summary

Judgment (Docket Entry 299); Defendant James Keil's Motion for

Summary Judgment (Docket Entry 300); and Defendant Stephen

Alaimo's Motion for Summary Judgment (Docket Entry 301)

(collectively "Defendants"). Pro se Plaintiff Tormu E. Prall

filed a Statement of Material Facts in Opposition to Defendants'

motions (Docket Entry 307).  These motions are being considered

on the papers pursuant to Fed. R. Civ. P. 78(b). For the reasons

set forth below, summary judgment is granted as to Jeffrey

Chiesa on Plaintiff's Eighth Amendment claims, granted to Kevin Newsom and Stephen Alaimo as to all remaining claims, and denied without prejudice as to the remainder of the defendants.

## II.  BACKGROUND

## A <u>Procedural History</u>

On or about March 8, 2010, Plaintiff, a prisoner at New Jersey State Prison ("NJSP"), filed a civil Complaint, pursuant to 42 U.S.C. § 1983, raising claims of constitutional violations. (Docket Entry 1).  Since that time, several defendants and claims have been added and dismissed, the history of which is set forth in detail in this Court's prior opinions and orders (Docket Entries 10, 11, 18, 31, 32, 77, 78, 163, 164, 166, 167, 265 and 266). The history relevant to the instant motions is set forth below.

On or about March 16, 2012, Plaintiff filed a motion for an injunction, alleging that on March 10, 2012, NJSP correctional officers, J. Ilardi, McNair, Sergeant J. Lindsey, and two unknown correctional officers, forced Plaintiff to perform oral sex on them. (Docket Entry 81 ¶ 1). In his motion, Plaintiff also alleged that before the sexual assault occurred, Officer J. Dominguez and one of the unknown correctional officers "ransacked" Plaintiff's cell and threw away or confiscated Plaintiff's legal documents related to this case. These officers also left Plaintiff's cell in a "shambles." (Docket Entry 81 ¶

2). Plaintiff further alleged that Sergeant B. Gilmartin and other unknown custody supervisors failed to contact the Special Investigation Division ("SID") about the incident, failed to summon medical staff to provide medical treatment for Plaintiff, and failed to prevent the officers under their command and control from starving Plaintiff. (Docket Entry 81 ¶ 3). In sum, Plaintiff alleged that, since his placement in the Management Control Unit ("MCU"), the physical abuse alleged in his prior motions "has not stopped," and the NJSP defendants "are unable and unwilling to prevent these abuses." (Docket Entry 81 ¶ 4).

On March 26, 2012, Plaintiff filed a motion for supplies (Docket Entry 84). While Plaintiff principally asked that he be provided with pens, legal size note pads, white envelopes and manilla envelopes so that he could prepare and file legal documents with respect to his case before the Court, he also argued that he did not receive responses to his grievances, making prison administrative remedies "unavailable." (Docket Entry 84, Motion at ¶ 1, Declaration at ¶ 1).[1]

---

[1] The Declaration submitted by Plaintiff in support of his motion for supplies further reiterates the charges Plaintiff made concerning the physical abuse, sexual assault, and ransacking of his cell and confiscation/loss of his legal documents, which he had alleged in his motion for injunctive relief. (Docket Entries 81; 84 ¶ 3). Plaintiff also alleged that, on March 11, 2012, the SID conducted a "sham" investigation regarding Plaintiff's alleged sexual assault. The SID officers purportedly told Plaintiff that nothing would come of his complaint because "inmates are scum of the earth and prison officials [are]

Following the Court's denial of Plaintiff's motion for a
preliminary injunction, the NJSP defendants filed a motion to
dismiss the action and/or for summary judgment on March 30,
2012. (Docket Entry 85).[2] Plaintiff filed an opposition to the
NJSP defendants' motion, and his own cross motion for summary
judgment on or about April 18, 2012. (Docket Entries 91 and 92).

---

considered the good guys." (Docket Entry 84 ¶ 4). Plaintiff
further alleged that, on March 13, 2012, Disciplinary Hearing
Officer ("DHO") C. Ralph approached Plaintiff's cell and told
Plaintiff that she was present to adjudicate Plaintiff guilty on
disciplinary charges. Plaintiff replied that he had never been
served with disciplinary charges. DHO Ralph allegedly told
Plaintiff that the named defendants in this civil action were
her "good friends" and asked her to sanction Plaintiff to
administrative segregation (Docket Entry 84 ¶¶ 5-6). Plaintiff
also alleged that an hour after the DHO came to his cell, he
received an adjudication of disciplinary charge form. Plaintiff
claimed that DHO Ralph lied about what Plaintiff had told her,
and sanctioned Plaintiff to 15 days loss of recreation, 15 days
detention, 60 days loss of communication, and 90 days
administrative segregation. (Docket Entry 84 ¶ 7). Plaintiff
further alleged that after he received the disciplinary report,
Officer Dominguez and two unknown officers came to Plaintiff's
cell, beat Plaintiff, made him ingest hallucinating drugs, and
again forced Plaintiff to perform oral sex on them. These
officers allegedly then told Plaintiff that their coworkers
don't care about anything the court has to say in this case.
(Docket Entry 84 ¶ 8). On May 29, 2012, Plaintiff filed a reply
to the NJSP defendants' opposition to his motion for supplies,
arguing he had exhausted his administrative appeals, and that
the letters he wrote to the Chief Disciplinary Hearing
Office/Central office on appeal were not submitted by counsel
purposely as a cover-up. (Docket Entry 110).
[2] The initial motion was filed on behalf of NJSP defendants,
Jimmy Barnes, James Keil, Michelle Ricci, and Chris Holmes. On
April 23, 2012, William Moleins, James Drumm, and Lt. Alaimo
asked to join in the other NJSP defendants' motion. (Docket Entry
94). On July 12, 2012, Ortiz also asked to join in the motion
for summary judgment. (Docket Entry 127).

The NJSP defendants filed a reply letter brief on April 30, 2012. (Docket Entry 99).

Thereafter, on or about September 4, 2012, Plaintiff filed a second amended Complaint without leave of court. (Docket Entry 135). Plaintiff attempted to re-introduce claims that were previously dismissed, add new parties, and add new claims regarding his allegations of physical abuse. The new claims included the allegations raised in his second motion for an injunction and motion for supplies, in which he alleged that on March 10, 2012, new defendants, Officers J. Dominguez and M. Moura ransacked his cell and that Sgt. J. Lindsey, Officer McNair, Officer J. Ilardi and two unknown correctional officers forced Plaintiff to perform oral sex on them. (Docket Entry 135 ¶ 123). Plaintiff also alleged that these officers, Sgt. Gilmartin and unknown nurses and custody supervisors refused to provide Plaintiff medical treatment and covered up the incident until it was reported to the SID on March 11, 2012. (*Id.*).

Plaintiff also alleged that he received disciplinary sanctions as a result of the incident in retaliation for Plaintiff pursuing this litigation. (Docket Entry 135 ¶ 124). Additionally, Plaintiff alleged that on or about March 14, 2012, Officer Dominguez and two unknown officers beat Plaintiff, forced him to ingest hallucinating drugs and then forced him to perform oral sex on them. SID conducted an investigation, but

6

Plaintiff contended the investigation was a sham. (Docket Entry 135 ¶ 125).

In an Opinion and Order entered on December 21, 2012, this Court denied Plaintiff's motion for legal supplies, granted in part Plaintiff's application to file a second amended Complaint, and directed that the NJSP defendants, as well as the newly added defendants, respond in writing to this Court within thirty (30) days from the date of entry of the Order, addressing Plaintiff's new allegations of physical and sexual abuse in March 2012, as alleged in Plaintiff's motion for an injunction and Second Amended Complaint. (Docket Entries 163 and 164). The Court allowed Plaintiff's claims of alleged sexual assault, physical abuse and continuing torture, regarding the March 2012 incidents,

> as well as the claims alleging denial of medical treatment for injuries allegedly sustained during the March 2012 incidents, and the retaliatory disciplinary charges stemming from those incidents, to proceed against the remaining NJSP defendants and the newly named defendants, Officers J. Dominguez, M. Moura, McNair, J. Ilardi, Sgt. J. Lindsey, and the two unknown correctional officers who allegedly took part in the alleged incidents of physical abuse against Plaintiff on March 10, 2012 and March 14, 2012, and Charles Warren, Administrator at NJSP, Vincent B. Wojciechowicz; NJSP SID; Suzanne Lawrence, NJSP Assistant Superintendent; and Kenneth Nelson, NJSP Associate Administrator.

(Docket Entry 166 at 9-10 & n.5; *see also* Docket Entries 163 and 164).

On March 20, 2012, Defendants Barnes, Holmes, Keil, and Ricci filed a Motion to Dismiss and/or for Summary Judgment (Docket Entry 85).[3] Plaintiff filed a cross-motion for summary judgment and for discovery requests on April 18, 2012 (Docket Entry 92). On December 26, 2012, this Court granted in part the NJSP Defendants' motion for summary judgment, dismissing all claims against the NJSP Defendants except the newly added Eighth Amendment claims of physical and sexual abuse "as well as the claims alleging denial of medical treatment for injuries allegedly sustained during the March 2012 incidents, and the retaliatory disciplinary charges stemming from those incidents," (Docket Entry 166 at 9-10 & n.5), observing "that these new claims and defendants are not part of these motions for summary judgment, and will be excluded from consideration herein." (Docket Entry 166 at 10). The Court also denied Plaintiff's motion for summary judgment and his requests for discovery. (Docket Entries 166 and 167).

On or about January 8, 2013, Plaintiff filed a motion to file a third amended Complaint and to be relieved from this Court's December 21, 2012 and December 26, 2012 Opinions and Orders. (Docket Entry 171). By Memorandum Opinion and Order dated March 28, 2013, this Court denied Plaintiff's motion and ordered him to cease his vexatious litigation practices. (Docket Entry 197). The

---

[3] Defendants Moleins, Drumm, and Alaimo subsequently requested to join the motion for summary judgment. (Docket Entry 94).

NJSP Defendants filed their answer to the Second Amended Complaint on July 19, 2013, (Docket Entry 214), and defendants Ilardi, Lawrence, Newsom, Moura, and Dominguez filed their answer on February 14, 2014. (Docket Entry 255).

During the pendency of the litigation, Plaintiff sought to obtain access to the footage of the video taken of his journey to his cell on March 10, 2012, as Senior SID Investigator Shawn Harrison's declaration, which was included with the NJSP Defendant's response to this Court's order to show cause why an injunction should not issue (Docket Entries 163 and 164; 184-4), referenced he viewed the video as part of his investigation. Harrison declared that the footage showed Plaintiff "standing outside of his cell, being placed in handcuffs and escorted back into his cell, and secured in his cell." (Docket Entry 184-4 ¶ 7). In the investigative report attached to the declaration, Harrison notes that after being escorted back into his cell "custody staff entered inmate Prall's [sic] and remained inside for approximately two minutes before exiting the cell as inmate Prall was secured inside the cell." (Docket Entry 184-4 at 9). The report further indicated "[a] copy of the video will remain [in the] case file." *Id.*

On October 31, 2013, Plaintiff filed a motion for sanctions against Michelle R. Ricci, William J. Moleins, Chris Holmes, Jimmy Barnes, James Drumm, James Keil, Sgt. Newsom, Ortiz,

Charles Warren, Stephen Alaimo, Kenneth Nelsen, J. Dominguez, M. Moura, Sgt. J. Lindsey, Officer McNair, Officer J. Ilardi as he had been informed that the video from March 10, 2010 could not be produced as the camera footage had been overwritten and inmates could not view footage due to security concerns. (Docket Entry 241 at 3). After briefing by the parties and a telephone conference, Magistrate Judge Karen M. Williams granted Plaintiff's motions for sanctions in the form of an adverse jury inference, but denied Plaintiff's request to have certain counts of his Second Amended Complaint deemed admitted. (Docket Entry 280). Defendant Sgt. Kevin Newsom filed a motion for reconsideration on the grounds that he was not present at NJSP in 2012, (Docket Entry 283), and the DOC Defendants filed a motion for reconsideration on June 26, 2014. (Docket Entry 285). Defendants Major Keil and Lt. Alaimo later joined the DOC Defendants' motion. (Docket Entries 289; 290).[4]

While those motions for reconsideration were pending, the DOC Defendants and Major Keil filed the instant motions for summary judgment on Plaintiff's Eighth Amendment claims, (Docket Entries 298; 300), and Sgt. Newsom and Lt. Alaimo filed their

---

[4] Defendants Alaimo, Keil, and Newsom had been part of the NJSP Defendants in previous motions, however substitution of attorneys were filed on their behalf (Docket Entries 277, 279, 274), and are therefore not part of the DOC Defendants for the purposes of this Opinion and Order.

motions for summary judgment as to all of the remaining claims,
(Docket Entries 299 and 301).  In the interim, Magistrate Judge
Williams granted Sgt. Newsom's motion for reconsideration,
(Docket Entry 311), and granted the DOC Defendants', Lt.
Alaimo's, and Sgt. Keil's motions for reconsideration only to
the extent that an evidentiary hearing would occur to determine
each defendant's degree of fault, if any, in the spoliation of
the video footage. (Docket Entry 312).

**B. <u>Statement of Facts</u>**

1.   *Allegations in Pleadings*

Based on the foregoing complicated history of this case,
the Court will identify the remaining claims and defendants.  In
the sole remaining claims from Plaintiff's Second Amended
Complaint, Plaintiff asserts on March 10, 2012, Officers J.
Dominguez and M. Moura ransacked his cell and that Sgt. J.
Lindsey, Officer McNair, Officer J. Ilardi and two unknown
correctional officers forced Plaintiff to perform oral sex on
them. (Docket Entry 135 ¶ 123).  Plaintiff also alleged that
these officers, Sgt. Gilmartin and unknown nurses and custody
supervisors refused to provide Plaintiff medical treatment and
covered up the incident until it was reported to the SID on
March 11, 2012. (*Id.*).

Plaintiff also alleged that he received disciplinary
sanctions as a result of the incident in retaliation for

11

Plaintiff pursuing this litigation. (Docket Entry 135 ¶ 124). He stated DHO Ralph informed him that her friends, Holmes, Ricci, Barnes, Moleins, Warren, Nelsen, Lawrence, and Attorey General staff" requested she sanction Plaintiff for pursuing this litigation (*Id.*).   He further alleged that on or about March 14, 2012, Officer Dominguez and two unknown officers beat Plaintiff, forced him to ingest hallucinating drugs and then forced him to perform oral sex on them again. SID conducted an investigation, but Plaintiff contended it was a sham as non-party Officer Schwartzer informed Plaintiff that "nothing will come out of the complaint." (Docket Entry 135 ¶ 125).

> 2.   *DOC Defendants' Statement of Material Facts*

Whether Plaintiff exhausted his administrative remedies as to the remaining claims is an issue.  The DOC Defendants set forth the inmate grievance procedure for inmates at NJSP as follows.  In accordance with N.J.A.C. 10A:8-1.1 to 10A:8-3.6, the NJSP has adopted Inmate Handbooks that set forth the rights and privileges of its inmates at NJSP.  The Inmate Handbook also sets forth the inmate grievance procedure at NJSP. (Declaration of Jessica Smith, Docket Entry 298-2 ¶¶ 3,5; Exhibit B at Docket Entry 298-2).[5] The handbook informs prisoners that they must fill out an Inmate Remedy Form ("IRF") and submit it to an

---

[5] Exhibit B is the portion of the NJSP handbook referencing the administrative remedies. (Docket Entry 298-2 ¶ 4).

appropriate staff member for delivery to a supervisor for review
(Smith Dec. 298-2 ¶ 7). When an inmate receives a response to
his IRF, they may appeal the response.  After an administrative
response has been provided to the inmate's appeal, the inmate's
administrative remedies have been exhausted. (Docket Entry 298-2
¶¶ 8-9 and Ex. B).

The DOC Defendants state Plaintiff has filed numerous IRFs
between March 1, 2012 and October 1, 2012, and attach them to
their response as Exhibit C to Smith's Declaration. (*See* Docket
Entry 298-2).  They assert none of the IRFs filed by Plaintiff
during the aforementioned period were properly and fully
exhausted.[6] Of the twenty-five IRFs submitted with the DOC
Defendants' motion,[7] only one IRF, dated March 13, 2012, mentions
the alleged sexual assault, claiming "Superintendent Barnes
masterminded my ill treatment and the rape I suffered on
03/10/12 . . . "(Docket Entry 298-2 at 35).  This IRF was
submitted in the context of Plaintiff asserting he has been
denied showers and food, and Lt. Gerdes responded "Inmate Prall
receives everything he is entitled to according to Institutional

---

[6] The Court notes one IRF, unrelated to the sexual assault, has
notations in the "Inmate's Administrative Appeal Information"
area. (Docket Entry 298-2 at 71).
[7] The Court notes Docket Entries 298-2 at 54 and 65 are the same
IRF.  Further, as discussed below, Plaintiff asserts he
submitted an IRF dated March 14, 2012, alleging the sexual
assault and the alleged denial of material treatment and cover-
up of the March 10th incident.  *See* Part II.B.5, below.

and Unit policy and procedure" but did not respond to the rape allegation. (Docket Entry 298-2 at 35). Plaintiff did not appeal this denial of his IRF; therefore, DOC Defendants assert Plaintiff has failed to exhaust his administrative remedies.

Defendants reference SID Investigator Harrison's Declaration submitted in response to the Court's order to show cause, (Docket Entry 184-4), and resubmit it for the Court's consideration on summary judgment (Docket Entry 298-3). Harrison indicates he was contacted on March 11, 2012 by NJSP Lt. Mendez, a non-party, regarding Plaintiff's allegations of sexual assault. As noted above, Harrison reviewed the video recording of March 10, 2012 from Plaintiff's housing unit, purportedly showing Plaintiff being placed in handcuffs, being escorted into his cell, and the officers leaving the cell two minutes later (Docket Entry 298-1 ¶ 17; 298-3 ¶ 7). The report attached to Harrison's declaration asserts "[t]he video does not depict any image to support Prall's allegation." (Docket Entry 293-3 at 9). Between March 11 and 25, 2012, Harrison interviewed Plaintiff, Sgt. Scantling, Officer Moura, Officer Ilardi, Officer Dimichele, Officer McNair, and Sgt. Lindsey regarding Plaintiff's allegations (Docket Entry 298-3 ¶¶ 8-9, 11-15). All denied anything inappropriate occurred. Based on his interviews and review of the video footage, Harrison concluded there was "no evidence or information could be found

14

to support inmate Prall's allegations. . . . Inmate Prall's allegations are deemed to be entirely without merit." (Docket Entry 298-3 at 12).

The DOC Defendants further noted Registered Nurse Milroy attempted to evaluate Plaintiff on March 10 and 11, 2012, however, he reportedly refused medical evaluation on both days. RN Milroy indicated Plaintiff did not show any signs of physical injuries, and he was medically cleared to remain in his housing unit. (Docket Entry 298-3 ¶ 10). DOC Defendants therefore assert Plaintiff has not given any evidence he was physically and sexually assaulted in March 2012.

3. *Sgt. Kevin Newsom's Statement of Uncontested Facts*

Sgt. Newsom notes, incorrectly,[8] that this Court's December 26, 2012 Opinion and Order granted the NJSP defendants' motion for summary judgment "with the exception of the plaintiff's newly added Eighth Amendment claim of physical and sexual abuse

---

[8] This Court's December 26, 2012 Opinion and Order specifically stated the newly added Eighth Amendment claims of physical and sexual abuse "as well as the claims alleging denial of medical treatment for injuries allegedly sustained during the March 2012 incidents, and the retaliatory disciplinary charges stemming from those incidents," would be permitted to continue. (Docket Entry at 9-10 & n.5).  The Court further specifically stated "these *new claims and defendants are not part of these motions for summary judgment, and will be excluded from consideration herein*." (Docket Entry 166 at 10 (emphasis added)). As certain defendants have not raised those issues in the present motions for summary judgment, the Court will not rule on those claims as to those defendants.

stemming from an incident of March 2012." (Docket Entry 299-1 ¶ 3).  He further asserts that he filed his Answer on February 14, 2014 (Docket Entry 255), and that he was not present in NJSP at any time in 2012 (Certification of Kevin Newsom, Docket Entry 299-2 ¶ 1). As such, he asserts he is entitled to summary judgment because the surviving claims from the Second Amendment Complaint do not allege his involvement.

    4. *Major James Keil's Statement of Uncontested Facts*

    Major Keil argues, again incorrectly,[9] that this Court's December 26, 2012 Opinion and Order granted the NJSP defendants' motion for summary judgment "with the exception of the plaintiff's newly added Eighth Amendment claim of physical and sexual abuse stemming from an incident of March 2012." (Docket Entry 300-1 ¶¶ 3).  He asserts the Eighth Amendment claims of physical and sexual abuse are "silent as to Defendant James Keil[,]" and therefore did not answer those allegations in the complaint (Docket Entry 300-1 ¶¶ 7, 9).  Major Keil asserts Plaintiff's answers to Interrogatories failed to identify "any specific involvement by Maj. Keil regarding the caims [sic] of physical and sexual abuse." (Docket Entry 300-1 ¶ 11).[10]  He cites Plaintiff's answers regarding Major Keil as follows:

---

[9] *See supra* note 8.
[10] Major Keil also contends Plaintiff's deposition on February 27, 2013 did not allege Major Keil's involvement in the physical and sexual abuse, however the deposition is not in the record

16

> Abuse of force forms or complaints filed by inmates
> against correctional officers are forwarded to Ricci,
> Barnes, Drumm, Moliens, Keil, Lt. Alaimo, Ortiz,
> Wojciechowicz, Warren, Lawrence. And have had personal
> or actual knowledge concerning my ongoing physical
> abuse.
>
> . . . .
>
> Disciplinary hearing officer C. Ralph and those who beat
> me drugged me, forced me to perform oral sex on them,
> and exposed me to disciplinary charges and sanctions
> informed me that defendants Warren, Ricci, Barnes,
> Drumm, Moliens, Keil, Alaimo, Ortiz, Lawrence and Nelsen
> instructed or directed them to take these actions.

(Docket Entry 300-1 at 8 ¶ 12). Major Keil contends Plaintiff

admits "there are no additional facts and evidence than [sic]

those set forth in the second amended complaint and the

discovery documents you sent me." (Docket Entry 300-1 ¶ 13).

Therefore, he asserts he is entitled to judgment as a matter of

law on Plaintiff's Eighth Amendment claims of physical and

sexual abuse as there is no triable issue of fact. (Docket Entry

300-1 ¶ 14).

    4. *Lt. Stephen Alaimo's Statement of Undisputed Material*

*Facts*

    Lt. Alaimo asserts he was suspended in November 2010 due to

allegations not concerning Plaintiff. (Docket Entry 301-2 ¶¶ 2-

3).  As a result, Lt. Alaimo was not stationed at NJSP between

---

thus the Court will not consider this alleged fact. *See* Fed. R.
Civ. P. 56(c)(1)(A).

November 2010 and October 2013, when he was cleared of all the allegations leading to his suspension. (Docket Entry 301-2 ¶¶ 4-5). Lt. Alaimo asserts he had "no reason to believe that any of the Corrections Officers named in this suit would take the actions alleged by the Plaintiff" before November 2010, (Affidavit of Stephen Alaimo, Docket Entry 301-3 ¶ 9), and that he has "learned no new information to suggest that plaintiff's allegations are accurate" since October 2013. (Docket Entry 301-3 ¶ 10). He therefore contends he is entitled to summary judgment as he had no direct involvement in the allegations, or knowledge or acquiescence of the alleged actions taken against Plaintiff.

   5.   *Plaintiff's Counter-Statement*

   Plaintiff submitted a brief counter-statement to defendants' motions (Docket Entry 307). He indicated that he relied on his claims related to excessive force, sexual assault, denial of medical treatment and retaliatory disciplinary charges this Court permitted to proceed. (Docket Entry 307 ¶ 1). He further stated he relied on Magistrate Judge Williams' June 12, 2014 order, (Docket Entry 280), "as undisputed proof that the defendants, their officers, agents, employers, and all persons acting in concert or participation with them" spoliated evidence that would have been beneficial to Plaintiff. (Docket Entry 307 ¶ 2).

18

Plaintiff also submitted an IRF dated March 14, 2012

("March 14 IRF") reading:

> On March 10, 2012, Officers Dominguez and Moura
> ransacked my cell. Sgt. Lindsey, Officers McNair,
> Ilardi, and two others I don't know by name forced me to
> perform oral sex on them. Unknown nurses, Sg. Gilmartin,
> and Officers Dominguez, Moura, and Iliardi refused me
> medical treatment to cover up.   On March 13, 2012
> Officers Dominguez and two I don't know by name beat me
> forced me to perform oral sex on them, and forced me to
> ingest hallucinating drugs.  Hearing Officer Ralph said
> defendants in *Prall v. Bocchini No: 10-1228* asked her to
> sanction me with disciplinary penalties for pursuing
> this litigation.  Staff mentioned above told me this is
> what I get for filing a lawsuit.

(Docket Entry 307 at 7).  The Court assumes that this March 13th

incident is the same as what the parties elsewhere refer to as the

March 14th incident.  Plaintiff indicated this IRF was proof that

"he attempted to [exhaust administrative remedies] but prison

officials prevented him from exhausting administrative remedies."

(Docket Entry 307 ¶ 3).

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that

there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). A dispute is "genuine" if "the evidence is such that a

reasonable jury could return a verdict for the non-moving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A fact is "material" only if it might affect the outcome

of the suit under the applicable rule of law. *See ibid.* Disputes

over irrelevant or unnecessary facts will not preclude a grant
of summary judgment. *See id.* The Court will view any evidence in
favor of the nonmoving party and extend any reasonable favorable
inferences to be drawn from that evidence to that party. *See
Scott v. Harris*, 550 U.S. 372, 378 (2007).

Where the nonmoving party bears the burden of persuasion at
trial, the moving party may be entitled to summary judgment
merely by showing that there is an absence of evidence to
support an essential element of the nonmoving party's case. Fed.
R. Civ. Pro. 56(c)(1)(B); *Celotex Corp. v. Catrett*, 477 U.S.
317, 325 (1986). The Court must still determine, however,
whether the motion and supporting materials show that the movant
is entitled to it. Fed. R. Civ. P. 56(e)(3). Failure to oppose
the motion or respond to Statement of Facts permits the Court to
consider facts asserted by the moving party "undisputed for the
purposes of the motion." Fed. R. Civ. Pro. 56(e)(2); *see also
Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d
168, 175 (3d Cir. 1990) (failure to dispute a party's statement
of material facts is not in and of itself a sufficient basis for
the entry of a summary judgment).

IV. **DISCUSSION**

A. <u>**Failure to Exhaust Administrative Remedies**</u>

Defendants first assert that Plaintiff's claims are barred
as he has failed to exhaust his administrative remedies (Docket

Entries 298-4 at 12; 303; 304; 306). The Prison Litigation

Reform Act ("PLRA") states:

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any other
> Federal law, by a prisoner confined in any jail, prison,
> or other correctional facility until such administrative
> remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Under this requirement, plaintiffs must

pursue all available administrative remedies to their end and

must do so properly.  "Failure to exhaust administrative

remedies is an affirmative defense that must be pled and proven

by the defendant. In appropriate cases, failure to exhaust may

be raised as the basis for a motion to dismiss." *Brown v. Croak*,

312 F.3d 109, 111 (3d Cir. 2002) (internal citations omitted).

The PLRA exhaustion requirement contemplates that the

prisoner must bring a grievance to the attention of the

appropriate prison official in order that the official has an

opportunity to respond to the grievance on its merits before the

prisoner resorts to the courts. *Spruill v. Gillis*, 372 F.3d 218,

227 (3d Cir. 2004); *see also Porter v. Nussle*, 534 U.S. 516,

524-25 (2002) (indicating PLRA "afford[s] corrections officials

time and opportunity to address complaints internally before

allowing the initiation of a federal case."). After filing an

initial complaint, the prisoner must carry the grievance through

any available appeals process. *Nyhuis v. Reno*, 204 F.3d 65, 67

(3d Cir. 2000). Thus, a prisoner has not exhausted administrative remedies until the prisoner has pursued a grievance through each level of appeal available within the prison system. *Spruill*, 372 F.3d at 232.

The Court, in determining whether a prisoner has properly exhausted administrative remedies, must evaluate the "'prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials.'" *Jackson v. Ivens*, 244 Fed. Appx. 508, 512 (3d Cir. 2007) (quoting *Spruill*, 372 F.3d at 222). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Nyhuis*, 204 F.3d at 77-78.

Defendants specifically rely on the declaration of SID Senior Investigator Harrison as evidence of the meritlessness of Plaintiff's claims of physical and sexual abuse. (Docket Entry 298-3).  His declaration indicates that between March 11 and 25, 2012, he interviewed Plaintiff, Sgt. Scantling, Officer Moura, Officer Ilardi, Officer Dimichele, Officer McNair, and Sgt. Lindsey regarding Plaintiff's allegations (Docket Entry 298-3 ¶¶ 8-15).  He also viewed the March 10, 2012 video footage of housing unit 4B-Right. (Docket Entry 298-3 at 9).  His report concluded "no evidence or information could be found to support inmate Prall's allegations. . . . Inmate Prall's allegations are

22

deemed to be entirely without merit." (Docket Entry 298-3 at 12).

This report was submitted to Defendant NJSP Administrator Charles Warren "for any action deemed appropriate." *Ibid.* The Court infers Administrator Warren concurred with and adopted Harrison's conclusions as no further actions were taken by NJSP as the result of the investigation, *see Scott v. Harris*, 550 U.S. 372, 378 (2007); *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995), thus Plaintiff's allegations "have been fully examined *on the merits* by the ultimate administrative authority and have been found wanting." *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000) (emphasis in original). "With that substantive determination having already been made at the highest level," it would be pointless to require Plaintiff to "jump through any further administrative hoops to get the same answer. Thus judicial consideration is now open to him." *Ibid.* Plaintiff has therefore exhausted his administrative remedies regarding his Eighth Amendment claims of physical and sexual abuse.[11]

Alternatively, Plaintiff has raised a serious question as to whether NJSP prevented him from exhausting his administrative

---

[11] The Court expresses no opinion as to whether Plaintiff exhausted his administrative remedies for his denial of medical and retaliation claims arising out of the March 2012 incidents as the parties have not briefed the issues.

remedies.  The Third Circuit has recognized that certain
circumstances may make administrative remedies "unavailable" to
inmates, preventing the exhaustion of administrative remedies
and excusing inmates from failure to exhaust those remedies.
*See Spada v. Martinez*, 579 Fed. Appx. 82, 85 (3d Cir. 2014)
("However, if a prison official thwarts a prisoner's ability to
exhaust his administrative remedies, those remedies are not
considered available within the meaning of § 1997e."); *see also
Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002)(administrative
remedies unavailable where prison officials gave inmate
erroneous instructions about grievance process); *Camp*, 219 F.3d
at 281 (administrative remedies unavailable where inmate was put
on grievance restriction).

In support of their motion, the DOC Defendants have
submitted the declaration of Jessica Smith, the Executive
Assistant II at NJSP, which provides various administrative
records pertaining to Plaintiff. (Docket Entry 298-2). They
argue, and Plaintiff does not dispute, that Plaintiff was well
aware of the grievance procedures in March 2012 as he has filed
many IRFs during his time in NJSP. Defendants have submitted
what purports to be all IRFs filed by Plaintiff between March 1
and October 1, 2012 as evidence that Plaintiff understands the
process and has availed himself of it many times.  They further
argue only one of twenty-five distinct IRFs mentions the alleged

sexual assault: "Superintendent Barnes masterminded my ill treatment and the rape I suffered on 03/10/12 . . . ." (Docket Entry 298-2 at 35). This IRF is dated March 13, 2012, and has no entries in the appeals section, thus it is clear that Plaintiff did not appeal the March 13, 2012 IRF decision.[12]

However, Plaintiff submitted in his opposition papers an IRF dated March 14, 2012 ("March 14 IRF") that was not included in the Defendants' submission of "all" IRFs filed by Plaintiff. The March 14 IRF reads:

> On March 10, 2012, Officers Dominquez and Moura ransacked my cell. Sgt. Lindsey, Officers McNair, Ilardi, and two others I don't know by name forced me to perform oral sex on them. Unknown nurses, Sg. Gilmartin, and Officers Dominguez, Moura, and Iliardi refused me medical treatment to cover up. On March 13, 2012 Officers Dominquez and two I don't know by name beat me forced me to perform oral sex on them, and forced me to ingest hallucinating drugs. Hearing Officer Ralph said defendants in Prall v. Bocchini No: 10-1228 asked her to sanction me with disciplinary penalties for pursuing this litigation. Staff mentioned above told me this is what I get for filing a lawsuit.

(Docket Entry 307 at 7). Plaintiff submits the March 14 IRF as evidence Defendants prevented him from exhausting his administrative remedies. (Docket Entry 307 ¶ 3).[13]

---

[12] The Court further notes Plaintiff clearly was aware of the appeal process as one IRF has notations in that section (Docket Entry 289-2 at 71).

[13] Defendants rely on this Court's December 26, 2012 Order and Opinion granting Defendants' summary judgment motion in part due to Plaintiff's failure to exhaust administrative remedies, (Docket Entries 166 and 167), for the proposition that

Attached to the March 14 IRF is a Corrective Action Form ("CAF") instructing Plaintiff to complete a DOC, Health Services Request Form and Box (MR-007) form.[14]  The CAF further informs Plaintiff:

> This is not an IRSF matter, as there is an institutional form to address this issue. You are directed to utilize this form . . . which you can obtain from the unit officer or a social worker. Whenever you have a medical emergency, you are directed [to] NOT utilize the Inmate Remedy System, as this system does not run on an emergent basis . . . .

(Docket entry 307 at 6).  Defendants do not dispute the March 14 IRF was submitted to prison officials or that the CAF produced by Plaintiff does not correspond with the March 14 IRF, therefore the Court finds it admitted by Defendants that Plaintiff submitted the March 14 IRF to NJSP and the CAF corresponds with the March 14 IRF.

Defendants contend the March 14 IRF was not "properly filed" without further explanation, (Docket Entry 310 at 3-4) therefore the Court infers it was rejected due to the reasons stated on the CAF.  The handbook states the IRF "is used to

---

Plaintiff's present prevention argument is equally without merit. Plaintiff's Eighth Amendment claim pertaining to the alleged sexual assault was not before the Court at that time, nor was the March 14 IRF. The Court must therefore revisit this issue anew taking into consideration the new evidence.
[14] The DOC, Health Services Request Form and Box (MR-007) form was not submitted to the Court, nor was the portion of the handbook explaining the circumstances under which an inmate should utilize that form instead of an IRF.

provide a procedures for requesting information from appropriate staff persons and addressing*, on a first step basis* through the inmate request coordinator, concerns, problems or complaints which may be experienced on a day to day basis." (Docket Entry 298-2 at 30 (emphasis in original)). The statement on the CAF that Plaintiff's complaint could not be filed on an IRF contradicts the aforementioned portion of the inmate handbook, as well as the portion providing that requests deemed "urgent" will be handled on an expedited basis, (Docket entry 298-2, Exhibit B at 32 ¶ 9). It also contradicts Defendants' arguments in their moving briefs that Plaintiff never filled out an IRF regarding the alleged sexual assault aside from the one dated March 13, 2012. (Docket Entry 298-4 at 18; 298-2 at 35).  Both of these statements imply an IRF was in fact the proper form for submission of Plaintiff's administrative complaint, making the March 14 IRF's rejection unjustified.

"Section 1997e(a) only requires that prisoners exhaust such administrative remedies 'as are available.'" *Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002) (quoting *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000)).  "'Available' means 'capable of use; at hand'" or "'suitable; useable; accessible; obtainable; present or ready for immediate use. Having sufficient force or efficacy; effectual; valid.'" *Id.* at 113 (quoting Webster's II, New Riverside University Dictionary 141 (1994 ed.); Black's Law

Dictionary 135 (6th ed. 1990)). Viewing the evidence in the light most favorable to Plaintiff, the nonmoving party, the stated reasons for the rejection of the form, which contradicts the instructions the handbook, creates the impression the administrative procedures were not accessible or effectual. Thus even if this Court had not previously determined Plaintiff had exhausted his Eighth Amendment claim, there is a genuine question as to whether Defendants thwarted Plaintiff's ability to pursue his administrative remedies by making them unavailable to him. *See Spada v. Martinez*, 579 Fed. Appx. 82, 85 (3d Cir. 2014); *Brown*, 312 F.3d at 112-13. Defendants therefore have not shown they are entitled to judgment as a matter of law for Plaintiff's failure to exhaust available remedies.

## B. Eleventh Amendment Immunity

The DOC Defendants, joined by Major Keil, Sgt. Newsom, and Lt. Alaimo, (Docket Entries 303, 304, and 306), seek dismissal of Plaintiff's federal civil rights claims against them in their official capacities because they are entitled to Eleventh Amendment sovereign immunity and are not "persons" within the meaning of § 1983. Plaintiff has not opposed on this ground. (Docket Entry 307 at 3). To the extent Plaintiff's amended complaint (Docket Entry 185) seeks redress from Defendants in their official capacities, those claims must be dismissed with prejudice.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State." U.S. Const. amend XI. The "amendment has been interpreted to make states generally immune from suit by private parties in federal court." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). A suit against a public official "'in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . .'" *Printz v. United States*, 521 U.S. 898, 930−31 (1997) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  The *Will* Court concluded that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. at 71; *see also Smith v. New Jersey*, 908 F. Supp. 2d 560, 563−64 (D.N.J. 2012).

It is uncontested by Plaintiff that the Defendants, a former State Attorney General and various officials at NJSP, are state officials. Therefore, insofar as Plaintiff asserts claims against Defendants in their official capacities, those claims must be dismissed with prejudice.  Having determined that Plaintiff's claims against Defendants cannot proceed against them in their official capacities, this Court must determine

whether Plaintiff has set forth claims to proceed against
Defendants in their individual capacities.

## C. **Defendants' Personal Involvement**

The Defendants assert Plaintiff has failed to allege
specific facts establishing their personal involvement.  The DOC
Defendants, Major Keil, and Sgt. Newsom assert Plaintiff relies
primarily on the theory of *respondeat superior* (Docket Entries
298-4 at 23; 303; 304),[15] entitling them to judgment as a matter
of law.

"Government officials may not be held liable for the
unconstitutional conduct of their subordinates under a theory of
*respondeat superior.*" *Ashcroft v. Iqbal,* 556 U.S. 662, 676
(2009). State actors are liable only for their own
unconstitutional conduct. *Bistrian v. Levi*, 696 F.3d 352, 366
(3d Cir. 2012*).* The Third Circuit has identified two general
ways in which a supervisor-defendant may be liable for
unconstitutional acts undertaken by subordinates: (1) "liability
may attach if they, with deliberate indifference to the
consequences, established and maintained a policy, practice or
custom which directly caused [the] constitutional harm"; or (2)
"a supervisor may be personally liable under § 1983 if he or she

---

[15] Lt. Alaimo has not adopted this argument, therefore he
apparently concedes Plaintiff does not rely on *respondeat
superior* for his claims against Lt. Alaimo (Docket Entry 306).

participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.,* 766 F.3d 307, 316 (3d Cir. 2014) (internal citations omitted), *petition for cert. filed sub nom*, *Taylor v. Barkes*, No. 14-939 (Feb. 2, 2015). "[U]nder *Iqbal,* the level of intent necessary to establish supervisory liability will vary with the underlying constitutional tort alleged." *Id.* at 319.  In dicta, the Third Circuit suggested deliberate action was required to substantiate an excessive force claim made against a supervisor. *Id.* at 321 (citations omitted)*; see also Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010).

> In his sworn answer to Interrogatories, Plaintiff asserted:
>
> Abuse of force forms or complaints filed by inmates against correctional officers are forwarded to Ricci, Barnes, Drumm, Moliens, Keil, Lt. Alaimo, Ortiz, Wojciechowicz, Warren, Lawrence. And have had personal or actual knowledge concerning my ongoing physical abuse.
>
> Defendants Dominguez, Moura, Lindsey, McNair, Ilardi, and two others forced me to perform oral sex on them on March 10, 2012.  These defendants, Sgt. Gilmartin and unknown supervisors denied medical treatment.  I received disciplinary sanctions for pursuing this litigation.
>
> On March 14, 2012, Defendant Dominguez and others beat me, forced me to ingest drugs and perform oral sex.

(Docket Entry 300-4 ¶ 2).  This answer mirrors the allegation
made on the March 14 IRF (Docket Entry 307 at 7).  Plaintiff
further claimed Warren and Wojciechowicz "ordered or approved"
the physical and sexual abuse of Plaintiff, denial of medical
care, and retaliatory discipline charges, and that Warren,
Ricci, Barnes, Drumm, Moliens, Keil, Alaimo, Ortiz, Lawrence,
and Nelsen "instructed or directed" officers to take the actions
previously alleged (Docket Entry 300-4 at 10 ¶ 4).  Plaintiff
stated he was informed of the Defendants' instructions by DHO
Ralph and "those who beat me, forced drugged me, forced me to
perform oral sex on them, and exposed me to disciplinary charges
and sanctions . . . ." (Docket Entry 300-4 ¶ 4). He indicated he
intends to call DHO Ralph as a witness during trial, among
others (Docket Entry 300-4 ¶ 3).  This answer specifically sets
forth where, when, and how Plaintiff received information
regarding Defendants' actions.

    With one exception, Plaintiff has stated in interrogatories
direct involvement by each of the DOC Defendants,[16] as well as
Major Keil, in his physical and sexual assault claims in
conformance with one of the accepted bases of supervisor
liability. *Barkes,* 766 F.3d at 316. Therefore, except for

---

[16] The lone exception is Jeffery Chiesa, against whom Plaintiff
has made no direct claims. (*See generally* Docket Entry 300-4).
Summary judgment in favor of Jeffery Chiesa shall be granted as
to Plaintiff's Eighth Amendment claims.

Jeffrey Chiesa, they have not demonstrated that they are entitled to judgment as a matter of law as the present record indicates Plaintiff's claims are not solely dependent upon their supervisor status.

No facts have been alleged as to Newsom's involvement either in a direct capacity or as a supervisor.  Summary judgment must therefore be granted in his favor.

## D. Eighth Amendment Claim for Physical Abuse

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)(The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment). In an excessive force claim under the Eighth Amendment, the inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000). Summary judgment in favor of a defendant is not appropriate if it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain. *Id.* "Thus, courts considering a prisoner's claim must ask both if 'the

33

officials act[ed] with a sufficiently culpable state of mind'
and if the alleged wrongdoing was objectively 'harmful enough'
to establish a constitutional violation." *Hudson*, 503 U.S. at 8
(quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)). The
DOC Defendants, Major Keil, and Lt. Aliamo argue Plaintiff can
prove neither the subjective nor the objective component.

    1.   *DOC Defendants*

Defendants assert Plaintiff has failed to produce any
evidence of injury in support of his claims of physical abuse,
noting that he refused medical evaluation on March 10 and 11,
2012 and that he showed no sign of physical injury, (Docket
Entries 298-1 ¶¶ 19-20; 298-3 at 20-21), negating any claim of
injury.  They do not address, however, the fact that Plaintiff
stated in his interrogatories that a beating took place either
on March 13 or 14 at the direction of the DOC Defendants, Major
Keil, and Lt. Alaimo. (Docket Entry 300-4 at 8 ¶ 2, 10 at ¶ 4).
Evidence that Plaintiff was "medically cleared" on March 10 and
11 has no relevance to Plaintiff's physical state on March 13 or
14. Furthermore, the Third Circuit has explained "the Eighth
Amendment analysis must be driven by the extent of the force and
the circumstances in which it is applied; not by the resulting
injuries." *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).

That being said, in order to survive a motion for summary
judgment once the moving party has shown that there is an

34

absence of evidence to support an essential element of the
nonmoving party's case, Fed. R. Civ. Pro. 56(c)(1)(B); *Celotex
Corp. v. Catrett*, 477 U.S. 317, 325 (1986), "'the nonmoving
party must come forward with specific facts showing that there
is a genuine issue for trial' and do more than 'simply show that
there is some metaphysical doubt as to the material facts.'"
*United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011)
(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475
U.S. 574, 586–87 (1986) (internal quotation marks omitted)).
Plaintiff has set forth no admissible regarding the DOC
Defendants' direct involvement other than his answers to
interrogatories. Without more, Plaintiff's unsupported claims
that the DOC Defendants either participated in, knew of, or
ordered the abuse cannot withstand summary judgment.

However, this Court takes note that Defendants Ricci,
Moleins, Holmes, Barnes, Drumm, Ortiz, Warren, Lawrence, Nelsen,
Dominguez, Moura, Lindsey, McNair, Ilardi, Major Keil, and Lt.
Alaimo are presently subject to an order by Magistrate Judge
Williams imposing sanctions for spoliating video evidence
relevant to Plaintiff's allegations stemming from the March 10th
incident in the form of an adverse inference jury instruction.
(Docket Entry 280).[17]  No defendant filed any objections with the

_____

[17] Defendant Newsom had been subject to the order, however upon
moving for reconsideration, (Docket Entry 283), Magistrate Judge

35

ruling. *See* Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1);
*Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). The
DOC Defendants and Defendants Keil and Alaimo filed a motion for
reconsideration with Magistrate Judge Williams, (Docket Entry
285; 290), and Judge Williams granted the motions "for the
limited purpose of conducting an evidentiary hearing on each
Defendant's degree of fault." (Docket Entry 312 at 1). She
specifically declined to reconsider her determination that the
video evidence was in the control of the Defendants and her
finding of bad faith, subject to an evidentiary hearing yet to
take place. (Docket Entries 312 and 314).[18] Plaintiff
specifically relies on the inference permitting a jury to infer
that the video would have discredited Defendants as "undisputed
proof" of his claims (Docket Entry 307 ¶ 2).

"The spoliation inference is a permissive inference that is
predicated on the 'common sense observation' that when a party

---

Williams granted relief and denied sanctions against him.
(Docket Entry 311).

[18] Magistrate Judge Williams' order is referenced only to
establish the fact that certain defendants are currently subject
to a spoliation inference, to which Plaintiff is entitled to
have this Court consider during motions for summary judgment.
This Court expresses no opinion and makes no findings regarding
the degree to which each defendant had control over the video
footage, with the sole exception of Lt. Alaimo as he was not at
NJSP during the relevant time period.  For reasons discussed
below in Part III.D.3, it is undisputed that Lt. Alaimo was in
suspended status for unrelated reasons and that he could have
played no role in the events of 2012; therefore, no spoliation
inference can be applied to him.

to an adversarial proceeding destroys relevant evidence it is likely done out of fear that the evidence would be harmful to that party." *Kounelis*, 529 F. Supp. 2d at 520.  The adverse inference informs a jury that it is permitted, but not required, to infer that the destroyed evidence might have been unfavorable to Defendants' position. *Id.* at 521. Thus while the inference is not "undisputed proof" of Defendants' liability, Plaintiff is entitled to the inference at this point in time. *See Scott v. IBM Corp.*, 196 F.R.D. 233, 249-50 (D.N.J. 2000). "The Court emphasizes that plaintiff still bears the burden of proof should this case proceed to trial. At this stage, it only finds that a jury *could* find [in his favor] on account of this negative inference."  *Scott*, 196 F.R.D. at 249 (emphasis in original). Such an inference would appear to be most relevant to discrediting the Defendants' versions of the March 10th incident, and to support the claim of intentional cover-up and notification of the March 10th conduct by supervisors.

With the exception of Jeffery Chiesa, Plaintiff has alleged direct involvement by the DOC Defendants in the violation of his Eighth Amendment rights to be free from physical abuse. On the present record, which includes the spoliation inference, there is more than just the metaphysical inference that the DOC Defendants knew of or ordered the physical abuse.  The Court shall therefore deny summary judgment without prejudice, so that

upon Judge Williams' resolution of the spoliation issue, any defendants determined not to be subject to the inference may resubmit their motions.

    2.   *Major Keil*

Major Keil's motion for summary judgment must be denied at this point in time for the same reason. Plaintiff's interrogatories specifically implicate Major Keil of having "personal or actual knowledge concerning [Plaintiff's] ongoing physical abuse," (Docket Entry 300-4 ¶ 2), thereby giving rise to the inference he was involved in the physical and sexual abuse. (Docket Entry 300-4 ¶ 4).[19] Major Keil has submitted no affidavits on his behalf, and as discussed above, Plaintiff is entitled to the spoliation inference against Major Keil during summary judgment on the present record, pending Judge Williams' determination of culpability for the spoliation. (*See* Docket Entries 280 and 312). Therefore his motion for summary judgment on Plaintiff's Eighth Amendment claims is denied without prejudice, and he shall be permitted to refile for summary judgment should Magistrate Judge Williams determine he is not subject to the spoliation inference.

---

[19] Major Keil claims Plaintiff's deposition "was again silent as to any involvement by Maj. Keil," (Docket Entry 300-1 at 4 ¶ 10), however as a transcript of the deposition is not part of the record the Court will not consider this assertion. *See* Fed. R. Civ. P. 56(c)(1)(A).

3.   *Lt. Alaimo*

Lt. Alaimo is entitled to summary judgment as to Plaintiff's Eighth Amendment and retaliation claims as Plaintiff has failed to set forth specific evidence that supports his allegations beyond mere speculation. The Court takes as true Lt. Alaimo's uncontested statements that he was suspended from his duties for unrelated reasons between November 2010 and October 2013, when he was exonerated and reinstated, L. Civ. R. 56.1(a); (Docket Entries 301-2 ¶ 2; 309 ¶ 3), and was therefore not present at NJSP during the relevant period of time. Plaintiff has submitted no admissible evidence to contradict Lt. Alaimo's sworn statements that he had "no reason to believe that any of the Corrections Officers named in this suit would take the actions alleged by the Plaintiff" before November 2010, and has "learned no new information to suggest that plaintiff's allegations are accurate" since October 2013. (Docket Entry 301-2 ¶ 10). Any inference that Lt. Alaimo colluded with NJSP officials to violate Plaintiff's constitutional rights while he was suspended is not a reasonable inference and has no evidentiary basis in the record.  Therefore no reasonable jury could find Lt. Alaimo liable, and he will be dismissed as a defendant in this case.

4.   *Sgt. Newsom*

Sgt. Newsom has also demonstrated that he is entitled to judgment as a matter of law regarding Plaintiff's remaining claims.  His statement of uncontested facts indicate he was not stationed at NJSP during 2012, and therefore it would have been impossible for him to have participated in any abuse or retaliation towards Plaintiff at that time. (Docket Entry 299-2).  Nothing in Plaintiff's response contradicts that fact, (*see generally* 307).  Therefore pursuant to Local Civil Rule 56.1(a), it is deemed undisputed for the purposes of this motion.

Although one could hypothesize that Sgt. Newsom might have ordered or directed the alleged abuse and retaliation from afar, such an inference would be unreasonable given that Plaintiff's interrogatories and March 14 IRF make *no* mention of Sgt. Newsom's involvement in the abuse, retaliation, or denial of medical care. Thus while Sgt. Newsom incorrectly asserts the only remaining claims in this case are the Eighth Amendment claims, Plaintiff has never alleged Sgt. Newsom was involved in the denial of medical care and retaliation against him.

The only claims contained in the Second Amendment Complaint against Sgt. Newsom are that he physically assaulted Plaintiff in 2010, (Docket Entry 185 ¶ 120), and participated in vaguely warning Plaintiff to stop pursuing his beliefs, (Docket Entry 185 ¶ 129). These claims were previously dismissed by this

40

Court. As no reasonable juror could find Sgt. Newsom liable for the remaining 2012 claims, Sgt. Newsom's motion for summary judgment is granted as to all of Plaintiff's remaining claims. Furthermore, as this Court has already dismissed the other claims, Sgt. Newsom shall be terminated from this case.

5.   *Qualified Immunity*

The DOC Defendants and Major Keil finally argue that they are entitled to qualified immunity on Plaintiff's § 1983 claim for use of excessive force in violation of his Eighth Amendment rights on two grounds.[20] First, because "there have been no constitutional violations" as "[t]here is no evidence in the record to support Plaintiff's claims that he was physical or sexually abused in March 2012," and secondly because the law was not clearly established to put them on notice their conduct was unlawful. (Docket Entries 298-4 at 30-31; 303).

Qualified immunity is a defense available to government officials that, in certain cases, shields them from litigation arising from actions taken in the course of their duties. *Doe v. Groody*, 361 F.3d 232, 237 (3d Cir. 2004). In order for a defendant to be immune from liability, the Court must find that the defendant's conduct has not violated any clearly established

---

[20] Sgt. Newsom and Lt. Alaimo also argued they are entitled to qualified immunity, (Docket Entry 304; 306) however as the Court has granted their summary judgment motions on the merits, it is unnecessary to address this issue.

statutory or constitutional right. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). If, however, the Court finds that a reasonable official would have known that the alleged conduct was in violation of a clearly established federal right, then immunity is forfeited.

In assessing a defendant's qualified immunity, the Court conducts a two-step inquiry. *Doe*, 361 F.3d at 237. First, the Court determines whether a plaintiff has alleged a violation of a clearly established constitutional right. *Leveto v. Lapina*, 258 F.3d 156, 162 (3d Cir. 2001). If so, then the Court determines whether the right was clearly established at the time of the alleged violation. *Id.* A right is "clearly established" when its contours are sufficiently defined, such that "a reasonable official would understand that what he is doing violates that right." *Shea v. Smith*, 966 F.2d 127, 130 (3d. Cir. 1992).

Taking Plaintiff's allegations as true, *see Scott v. Harris*, 550 U.S. 372, 378 (2007) (noting that in qualified immunity cases, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable party opposing the [summary judgment] motion,'" which "usually means adopting . . . the plaintiff's version of the facts (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)(per curiam)), Plaintiff was forced to perform oral sex on various

prison officers on two occasions, was denied medical care, and was subjected to disciplinary charges at the direction of several prison officials. Again, accepting Plaintiff's factual allegations only for these purposes, he was also beaten and forced to ingest hallucinogenic drugs by the same officers on whom he was forced to perform oral sex. Thereafter, according to his facts, Plaintiff was specifically informed by DHO Ralph that these actions were motivated in part by the desire to punish Plaintiff for seeking redress in this Court. Plaintiff has adequately pled facts supporting a claim for a violation of the Eighth Amendment for sexual abuse against Defendants Dominguez, Lindsey, McNair, Moura, and Ilardi as there can be no serious debate that being forced to perform oral sex and accompanying physical assault is sufficiently serious to support an Eighth Amendment claim.

Defendants Dominguez, Lindsey, McNair, Moura, and Ilardi next assert "the law was not clearly established to put them on notice that their conduct was unlawful under the specific circumstances present in this case." (Docket Entry 298-4 at 31). "A right is clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Reedy v. Evanson*, 615 F.3d 197, 224 (3d Cir. 2010) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Although they do not describe the "specific

43

circumstances" present here that make it unclear that assaulting an inmate and forcing an inmate to perform oral sex on an officer is unlawful, this argument fails regardless as it is clear that "[p]risoners have a clearly established right 'not to be sexually abused by a state employee while in confinement.'" *Connors v. Hochberg*, 2014 WL 1294370, *2 (D.N.J. 2014) (quoting *Beers-Capitol v. Whetzel,* 256 F.3d 120, 142 n.15 (3d Cir. 2001)); *see also Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976); *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1970); *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 726 (3d Cir. 1989). Defendants Dominguez, Lindsey, Moura, McNair, and Ilardi are not entitled to qualified immunity on Plaintiff's Eighth Amendment claim for sexual abuse.

Supervisors can violate constitutional rights by "direct[ing] others to violate them . . . ." *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *see also Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316–17 (3d Cir. 2014), *petition for cert. filed sub nom*, *Taylor v. Barkes*, No. 14-939 (Feb. 2, 2015). Again accepting Plaintiff's allegations as true for this purpose only, Plaintiff has adequately plead facts establishing the remaining DOC Defendants and Major Keil violated his constitutional rights by ordering or approving Dominguez's, Lindsey's, Moura's, McNair's, Ilardi's, and John Doe officers' actions, (*see* Docket Entry 300-

44

4 ¶¶ 2, 4), which have already been determined to state a claim for violation Plaintiff's clearly established right to be free from physical and sexual abuse.

Plaintiff has also sufficiently plead facts, if accepted to be true for this purpose, to indicate that the remaining DOC Defendants and Major Keil violated his rights fueled, at least in part, by the desire to retaliate against Plaintiff for pursuing his right to petition a court for redress. (*See* Docket Entries 300-4 ¶ 2 and 307 at 7). In addition to the clearly established right to be free from physical and sexual abuse, reasonable officers would have understood in March 2012 that ordering physical and/or sexual assault in retaliation violated the Constitution. *See generally Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *Anderson v. Davila*, 125 F.3d 148, 160-61 (3d Cir. 1997); *Whichard v. Baylor*, 2004 WL 792771, *2 (E.D. Pa. 2004). Therefore the remaining DOC Defendants and Major Keil are not entitled to summary judgment on qualified immunity grounds.  The Court again emphasizes it is not making a finding that any of Plaintiff's allegations are true, and Plaintiff continues to have the burden of proving them at trial.

## V.   CONCLUSION

For the reasons stated above, Plaintiff's claims against the Defendants in their official capacities are dismissed with prejudice.  The DOC Defendants' motion for summary judgment on

Plaintiff's Eighth Amendment claims (Docket Entry 298) is granted as to Jeffery Chiesa, and denied without prejudice as to the remaining DOC Defendants. Lt. Alaimo's motion for summary judgment (Docket Entry 301) is granted.  Major Keil's motion for summary judgment (Docket Entry 300) is denied without prejudice. Sgt. Newsom's motion for summary judgment (Docket Entry 299) is granted as to all of Plaintiff's remaining claims.  An accompanying Order will be entered.


**March 30, 2015**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge