IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TORMU E. PRALL,<br><br>            Plaintiff,<br><br>      v.<br><br>JOSEPH L. BOCCHINI, JR., et al.,<br><br>            Defendants. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action<br>No. 10-1228 (JBS-KMW)<br><br><br>**OPINION** |

APPEARANCES:

TORMU E. PRALL, Plaintiff <u>pro se</u>
#700294B/650739
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

ALEX ZOWIN, Deputy Attorney General
STATE OF NEW JERSEY OFFICE OF THE ATTORNEY GENERAL
25 Market Street,P.O. Box 112
Trenton, New Jersey 08625
Attorney for Defendants Jimmy Barnes, J. Dominguez, James Drumm,
Chris Holmes, J. Ilardi, Suzanne Lawrence, Officer McNair,
Officer Moura, William J. Moleins, Kenneth Nelsen, Ruben Ortiz,
Michelle R. Ricci, Charles Warren, Sergeant Lindsey, and Vincent
Wojciechowicz

JOHN M. BOWENS, ESQ.
SCHENCK, PRICE, SMITH & KING, LLP.
220 Park Avenue
P.O. Box 991
Florham Park, New Jersey 07932
Attorney for Defendant James Keil

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

This matter comes before the Court on Defendants' Jimmy Barnes, J. Dominguez, James Drumm, Chris Holmes, J. Ilardi, Suzanne Lawrence, Officer McNair, Officer Moura, William J. Moleins, Kenneth Nelsen, Ruben Ortiz, Michelle R. Ricci, Charles Warren, Sergeant Lindsey, and Vincent Wojciechowicz ("DOC Defendants") Motion for Summary Judgment, (Docket Entry 339), and Defendant James Keil's Motion for Summary Judgment, (Docket Entry 340). Pro se Plaintiff Tormu E. Prall filed opposition to Defendants' motions (Docket Entry 342). These motions are being considered on the papers pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the motions shall be granted.

**II.   BACKGROUND**

**A. Procedural History**

On or about March 8, 2010, Plaintiff, a prisoner at New Jersey State Prison ("NJSP"), filed a civil complaint pursuant to 42 U.S.C. § 1983. (Complaint, Docket Entry 1). Since that time, several defendants and claims have been added and dismissed, the history of which is set forth in detail in this Court's prior opinions and orders (Docket Entries 10, 11, 18, 31, 32, 77, 78, 163, 164, 166, 167, 265 and 266). The history relevant to the instant motions is set forth below.

2

On or about March 16, 2012, Plaintiff filed a motion for an injunction, alleging that on March 10, 2012, NJSP Officers Ilardi and McNair, Sergeant Lindsey, and two unknown officers forced Plaintiff to perform oral sex on them. (Motion for Injunction, Docket Entry 81 ¶ 1). Plaintiff also alleged Officer Dominguez and one of the unknown officers "ransacked" Plaintiff's cell and threw away or confiscated Plaintiff's legal documents related to this case before the sexual assault occurred, leaving Plaintiff's cell in a "shambles." (Id. ¶ 2). Plaintiff further alleged that Sergeant Gilmartin and other unknown custody supervisors failed to contact the Special Investigation Division ("SID") about the incident, failed to summon medical staff to provide medical treatment for Plaintiff, and failed to prevent the officers under their command and control from starving Plaintiff. (Id. ¶ 3).

Plaintiff alleged in a later motion that the investigation conducted by SID was a "sham," and that the SID officers told him that nothing would come of his allegations of sexual assault. (Declaration in Support of Motion, Docket Entry 84 ¶ 4). He also alleged that Disciplinary Hearing Officer C. Ralph approached his cell on March 13, 2012, and told him that she was present to adjudicate Plaintiff guilty on disciplinary charges. Plaintiff replied that he had never been served with disciplinary charges, at which time she allegedly told Plaintiff

3

that "her good friends Michelle R. Ricci, William J. Moleins, Chris Holmes, James Drumm, Ron Wagner, James Keil, Captain Ortiz, Prison Administrator Charles Warren, Education Supervisor Shirley Stephens, Social Worker Crystal Raupp, School Teacher Ishmael, Mental Health Doctor Flora J. Defilippo, and her good friends" in the Attorney General's Office "asked her to sanction [Plaintiff] to administrative segregation." (Id. ¶¶ 5-6). He then stated Officer Dominguez and two unknown officers came to his cell, beat him, made him ingest hallucinating drugs, and again forced him to perform oral sex on them. (Id. ¶ 8).

Thereafter, Plaintiff filed a second amended complaint ("SAC") without leave of court. (SAC, Docket Entry 135). Plaintiff attempted to re-introduce claims that were previously dismissed, add new parties, and add new claims regarding his allegations of physical abuse. The new claims included the allegations that on March 10, 2012, Officers Dominguez and Moura ransacked his cell, followed by Sergeant Lindsey, Officer McNair, Officer Ilardi and two unknown correctional officers forcing him to perform oral sex on them. (Id. ¶ 123). Plaintiff further alleged that Officers Dominguez, Moura, and Ilardi, as well as Sergeant Gilmartin and unknown nurses and custody supervisors, refused to provide Plaintiff medical treatment and covered up the incident until it was reported to the SID on March 11, 2012. (Id.). Plaintiff also raised a retaliation

4

claim, asserting he received disciplinary sanctions at the direction of defendants Holmes, Ricci, Barnes, Moleins, Warren, Nelsen, Lawrence, and unidentified Attorney General staff in order to punish him for pursuing this litigation. (Id. ¶ 124). The SAC also included his claim that Officer Dominguez and two unknown officers beat him, forced him to ingest hallucinating drugs, and then forced him to perform oral sex on them on or about March 14, 2012. (Id. ¶ 125).

This Court permitted portions of the second amended complaint to proceed and directed the DOC and newly-added defendants to respond to Plaintiff's new allegations of physical and sexual abuse. (December 21, 2012 Order, Docket Entry 164). On December 26, 2012, this Court partially granted a previously-filed motion for summary judgment and dismissed all claims against the DOC Defendants except the newly added physical and sexual abuse, denial of medical care, and retaliation charges. (December 26, 2012 Order, Docket Entry 167).

Throughout this litigation, Plaintiff sought to obtain access to the footage of the video taken outside of his cell on March 10, 2012. Senior SID Investigator Shawn Harrison indicated he viewed the video as part of his investigation and declared that the footage showed Plaintiff "standing outside of his cell, being placed in handcuffs and escorted back into his cell, and secured in his cell." (Harrison Declaration, Docket Entry 184-4

¶ 7). Harrison noted that after Plaintiff was escorted back into his cell, "custody staff entered inmate Prall's [sic] and remained inside for approximately two minutes before exiting the cell as inmate Prall was secured inside the cell." (Id. at 9). The report further indicated "[a] copy of the video will remain [in the] case file."  (Id.).

On October 31, 2013, Plaintiff filed a motion for sanctions against Michelle R. Ricci, William J. Moleins, Chris Holmes, Jimmy Barnes, James Drumm, James Keil, Sgt. Newsom, Ortiz, Charles Warren, Stephen Alaimo, Kenneth Nelsen, J. Dominguez, M. Moura, Sgt. J. Lindsey, Officer McNair, Officer J. Ilardi after being informed the video could not be produced as the camera footage had been overwritten. (Docket Entry 241 at 3). After briefing by the parties and a telephone conference, Magistrate Judge Karen M. Williams granted Plaintiff's motions for sanctions in the form of an adverse jury inference. (Docket Entry 280). The DOC Defendants filed a motion for reconsideration on June 26, 2014, (Docket Entry 285), which Major Keil later joined. (Docket Entry 289).

The DOC Defendants and Major Keil filed motions for summary judgment on Plaintiff's claims of physical and sexual abuse. (Docket Entries 298 and 300). The Court denied the DOC Defendants' and Major Keil's motions for summary judgment on the physical and sexual abuse claims as they were subject to the

spoliation inference at the time; however, the Court granted leave to refile those motions in the event Magistrate Judge Williams granted their motions for reconsideration. (Slip Opinion, Docket Entry 317 at 37-38).

While the summary judgment motions were pending, Magistrate Judge Williams granted the DOC Defendants' and Major Keil's motions for reconsideration only to the extent that an evidentiary hearing would occur to determine each defendant's degree of fault in the spoliation of the video footage. (Docket Entry 312). She conducted the hearing on April 9, 2015, (Docket Entry 319), and vacated the order imposing spoliation sanctions on September 14, 2015. (Docket Entry 336). In reaching her decision, she credited Investigator Harrison's testimony regarding "certain inconsistencies contained in his prior declarations submitted on his behalf," and held that "the unavailability of the footage cannot be attributed to the individual State Defendants and, therefore, sanctions would be inappropriate." (Id. at 3).[1] Plaintiff filed a motion for reconsideration, (Docket Entry 341), which Magistrate Judge Williams denied on November 20, 2015, (Docket Entry 347).

---

[1] Plaintiff conceded at oral argument that Major Keil had no knowledge of or involvement in the destruction of the video. (Oral Argument Transcript, Docket Entry 327-2 at 14:1-6).

Shortly after the order vacating the spoliation inference, the DOC Defendants and Major Keil filed the instant motions for summary judgment. (Docket Entries 339 and 340). Plaintiff filed opposition to both motions. (Docket Entry 345).

## B. Statement of Facts

1.  *Allegations in Pleadings*

In the sole remaining claims from Plaintiff's second amended complaint, Plaintiff asserts on March 10, 2012, Officers Dominguez and Moura ransacked his cell and Sergeant Lindsey, Officer McNair, Officer Ilardi and two unknown correctional officers forced Plaintiff to perform oral sex on them. (SAC ¶ 123). Plaintiff also alleged that these officers, Sergeant Gilmartin and unknown nurses and custody supervisors refused to provide Plaintiff medical treatment and covered up the incident until it was reported to the SID on March 11, 2012. (Id.).

Plaintiff also alleged that he received disciplinary sanctions in retaliation for pursuing this litigation. (Id. ¶ 124). He stated Officer Ralph informed him that her friends "Holmes, Ricci, Barnes, Moleins, Warren, Nelsen, Lawrence, and Attorney General staff" asked her to sanction Plaintiff because he was pursuing this litigation. (Id.). He further alleged that on or about March 14, 2012, Officer Dominguez and two unknown officers beat and forced him to ingest hallucinating drugs before making him perform oral sex on them. (Id. ¶ 125). SID

conducted an investigation, but Plaintiff contended it was a sham as non-party Officer Schwartzer informed Plaintiff that "nothing will come out of the complaint." (Id.).

    2. *DOC Defendants' Statement of Material Facts*

    The DOC Defendants adopt and resubmit SID Investigator Harrison's declaration submitted in response to this Court's Order to Show Cause. (DOC SOF, Docket Entry 339-1 ¶ 1). They state that "[a]n SID investigation is conducted when incidents – *i.e.* physical and/or sexual abuse of inmates – occur or are known to occur at NJSP. SID is part of the Department of Corrections' Central Office, and is not under the direction of individual institutions." (Id. ¶ 4). According to the DOC Defendants, Harrison was contacted on March 11, 2012 by NJSP Lieutenant Mendez, a non-party, regarding Plaintiff's allegations of sexual assault. (Id. ¶ 5). Harrison opened an investigation into the allegations shortly after this report. (Id. ¶ 6).

    During the investigation, Sergeant Scantling "reported that Plaintiff threatened to throw urine at Senior Corrections Officer Moura. He also reported that Plaintiff claimed officers took his legal documents and allegedly forced him to perform oral sex on them on March 10, 2012." (Id. ¶ 7). Harrison reviewed the video recording from Plaintiff's housing unit, which purportedly showed Plaintiff being placed in handcuffs and

escorted into his cell. (Id. ¶ 8). When he was interviewed by Harrison on March 11, Plaintiff was unable to provide the names or physical features of the officers who allegedly assaulted him. (Id. ¶ 9). Sergeant Scantling also told Harrison that he had taken Plaintiff to be evaluated by medical personnel promptly after Plaintiff made his allegations, but Plaintiff refused medical attention on March 10 and 11. (Id. ¶¶ 10-11). A nurse noted that Plaintiff did not show any signs of physical injury on those days. (Id. ¶ 11).

Between March 11 and 25, 2012, Harrison interviewed Plaintiff, Sergeant Scantling, Officer Moura, Officer Ilardi, Officer Dimichele, Officer McNair, and Sergeant Lindsey regarding Plaintiff's allegations. (Id. ¶¶ 12-16). All of the officers denied anything inappropriate occurred. (Id.). Based on his interviews and review of the video footage, Harrison concluded there was no evidence to support Plaintiff's allegations. (Id. ¶ 17). According to Harrison, "[t]he investigation did reveal that Plaintiff was upset with a routine cell search of his cell, refused to lock back in his cell afterwards, became angry and threatened custody officers; therefore, Plaintiff was placed in pre-hearing detention." (Id. ¶ 17). The DOC Defendants therefore assert Plaintiff has not provided any evidence of the personal involvement of several of

10

the DOC Defendants or that he was physically and sexually assaulted in March 2012.

3. *Major James Keil's Statement of Uncontested Facts*

Major Keil argues Plaintiff has failed to demonstrate that he was personally involved in the alleged sexual assault, denial of medical care, and retaliation. (Keil SOF, Docket Entry 340-1 ¶¶ 5-7). He states that as the only remaining claims in the complaint do not implicate him, he should be dismissed from the proceedings. (Id. ¶ 5). In support of his arguments, Major Keil states he was not stationed at NJSP at the time of the alleged actions in March 2012. (Id. ¶ 9). He asserts he does not have any knowledge of the alleged actions against Plaintiff as he was only stationed at NJSP between August 14, 2009 and December 3, 2011. (Id. ¶¶ 8-15). He further denies having instructed anyone to abuse, deny medical care to, or retaliate against Plaintiff. (Id. ¶¶ 13-15).

Major Keil also cites Plaintiff's sworn interrogatories and deposition testimony in support for his argument that Plaintiff has not sufficiently demonstrated his personal involvement. According to Major Keil, Plaintiff's deposition testimony does not implicate Major Keil as one of the persons who allegedly instructed Officer Ralph to discipline Plaintiff after he filed a grievance about the sexual assault. (Id. ¶ 17). Moreover, Plaintiff's answers to interrogatories "fail to identify any

11

specific involvement by Major Keil regarding the claims of (a) physical and sexual abuse stemming from March 2012 incidents; (b) denial of medical treatment for injuries allegedly sustained during the March 2012 incidents; and (c) the retaliatory disciplinary charges stemming from those incidents . . . ." (Id. ¶ 18). He cites Plaintiff's answers regarding Major Keil as follows:

> Abuse of force forms or complaints filed by inmates against correctional officers are forwarded to Ricci, Barnes, Drumm, [Moleins], Keil, Lt. Alaimo, Ortiz, Wojciechowicz, Warren, Lawrence. And have had personal or actual knowledge concerning my ongoing physical abuse.
>
> . . . .
>
> Disciplinary hearing officer C. Ralph and those who beat me, forced drugged me, forced me to perform oral sex on them, and exposed me to disciplinary charges and sanctions informed me that defendants Warren, Ricci, Barnes, Drumm, [Moleins], Keil, Alaimo, Ortiz, Lawrence and Nelsen instructed or directed them to take these actions.

(Id. at ¶¶ 19-20). Major Keil contends Plaintiff admits "there are no additional facts and evidence than [sic] those set forth in the second amended complaint and the discovery documents you sent me." (Id. ¶ 23). Finally, he argues that as Magistrate Judge Williams vacated the spoliation inference against him, there is no admissible evidence supporting Plaintiff's allegations against him. (Id. ¶¶ 31-33). He therefore asserts he is entitled to judgment as a matter of law.

3.   *Plaintiff's Counter-Statement*

Plaintiff submitted a letter brief in opposition to the motions. (Plaintiff's brief, Docket Entry 342).[2] Plaintiff did not submit a statement of material uncontested facts but instead indicated he would rely on this Court's March 30, 2015 Opinion and Order and his submissions in connection with his motion for reconsideration. (Id. at 2-3). He states that he intends to call Investigator Harrison, Deputy Attorney General Christine Kim, and Deputy Attorney General Randy Miller as witnesses, asserting they will testify that "Ms. Kim and Mr. Miller had Investigator Harrison spoliate the video footage of the March 10th incident in question to protect the Defendants from liability." (Id. at 2-3).

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (internal citations and quotation marks omitted); *see also* Fed. R. Civ. Pro. 56(a). A "genuine" dispute of "material"

---

[2] Plaintiff also filed an unauthorized sur-reply. (Docket Entry 345). As the sur-reply was filed in violation of Local Civil Rule 7.1(d)(3) and Major Keil objects to the sur-reply, (Docket Entry 346), the Court will not consider it for summary judgment purposes.

fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, will not preclude the entry of summary judgment. *Id.* The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

In order to survive a motion for summary judgment "'the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial' and do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted)). Plaintiff cannot rely on the unsupported allegations in his complaint, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and "must present more than the 'mere existence of a scintilla of evidence' in his favor." *Shah v. Bank of Am.*, 346 F. App'x 831, 833 (3d Cir. 2009) (quoting *Anderson*, 477 U.S. at 252). Moreover, the moving party may be entitled to summary judgment merely by showing that there is an absence of evidence

14

to support an essential element of the nonmoving party's case when the nonmoving party bears the burden of persuasion at trial. Fed. R. Civ. Pro. 56(c)(1)(B); *Celotex*, 477 U.S. at 325.

**IV.   DISCUSSION**

Plaintiff has not responded to the motion other than to indicate he wishes to rely on his motion for reconsideration and this Court's March 30, 2015 Opinion and Order. (Plaintiff's brief, Docket Entry 342). None of these items constitute a responsive statement of facts for summary judgment purposes, *see* Local Civ. R. 56.1(a) ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion . . . ."), therefore the Court deems the DOC Defendants' and Major Keil's statements of facts undisputed for summary judgment purposes. Fed. R. Civ. Pro. 56(e)(2).

**A. DOC Defendants**

The DOC Defendants have moved for summary judgment only on Plaintiff's claims of physical and sexual abuse from March 2012. They do not seek summary judgment on his denial of medical care and retaliation claims. They argue Plaintiff has failed to provide specific facts establishing the personal involvement of

15

Defendants Ricci, Moleins, Holmes, Barnes, Drumm, Ortiz, Warren, Wojciechowicz, Lawrence, Nelsen, and Moura in the alleged physical and sexual abuse that occurred in March 2012. (DOC Brief, Docket Entry 339-3 at 13).

A plaintiff in a § 1983 action must demonstrate a defendant's "personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). He must "must portray specific conduct by state officials which violates some constitutional right." *Id.* (internal citations and quotation marks omitted). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Id.* The Court finds that no reasonable factfinder could conclude Defendants Holmes, Ortiz, Drumm, and Wojciechowicz were personally involved in the alleged physical and sexual abuse that occurred in March 2012. Those defendants are therefore entitled to summary judgment on those claims.

Plaintiff asserted in his interrogatory answers that

> [a]buse of force forms or complaints filed by inmates
> against correctional officers are forwarded to Ricci,
> Barnes, Drumm, [Moleins], Keil, Lt. Alaimo, Ortiz,
> Wojciechowicz, Warren, Lawrence. And have had personal
> or actual knowledge concerning my ongoing physical
> abuse.
>
> Defendants Dominguez, Moura, Lindsey, McNair, Ilardi,
> and two others forced me to perform oral sex on them on
> March 10, 2012. These defendants, Sgt. Gilmartin and
> unknown supervisors denied medical treatment. I received
> disciplinary sanctions for pursuing this litigation.
>
> On March 14, 2012, Defendant Dominguez and others beat
> me, forced me to ingest drugs and perform oral sex.

(Interrogatories, Docket Entry 300-4 ¶ 2). Plaintiff further
claimed Warren and Wojciechowicz "ordered or approved" the
physical and sexual abuse and that Warren, Ricci, Barnes, Drumm,
Moleins, Keil, Alaimo, Ortiz, Lawrence, and Nelsen "instructed
or directed" officers to take the actions previously alleged
(Id. ¶ 4).

In support of their motion, the DOC Defendants assert that
several of them were not working at NJSP at the time of the
incidents, relying on the April 8, 2015 declaration of DOC human
resources manager Judy Todd. (Todd Declaration, Docket Entry
327-3 at 23). Ms. Todd indicated that Drumm retired on September
1, 2010, (Id. ¶ 4); Captain Ortiz retired on July 1, 2011, (Id.
¶ 5); and Wojciechowicz separated from DOC employment on January
1, 2012, (Id. ¶ 6). Holmes also was not working at NJSP in March
2012, as he served as the Administrator of South Woods State
Prison from August 2011 to December 2012. (Holmes Declaration,

17

Docket Entry 327-3 at 7 ¶¶ 1-2). After that assignment, he began working in the DOC's Central Office. (Id. ¶ 2).

Plaintiff has not submitted any admissible evidence to contradict the evidence that these defendants were not at NJSP at the time of the alleged assaults.[3] His conclusory allegations in his interrogatories cannot withstand a motion for summary judgment in the absence of further support. *See Gonzalez v. Sec'y of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012). When considered with the other evidence before the Court, no rational factfinder could credit those statements. *See id.* at 264; *Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011). Any inference that Drumm, Ortiz, Holmes, and Wojciechowicz colluded with the then-current NJSP officials to violate Plaintiff's constitutional rights is not a reasonable inference as it has no factual basis in the record. *See Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) ("[A]n inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment. Inferences must flow directly from admissible evidence." (internal citation and quotation marks omitted)). Therefore, because Plaintiff failed to proffer any evidence contrary to the

---

[3] The fact that Lawrence was working at NJSP on March 12, 2012, prior to the second alleged assault, distinguishes her from Drumm, Ortiz, Holmes, and Wojciechowicz. (Lawrence Declaration, Docket Entry 327-3 at 10 ¶¶ 1-2).

DOC Defendants' documentary evidence, the Court finds that no genuine issue of material fact exists as to whether defendants Drumm, Ortiz, Holmes, and Wojciechowicz were personally involved in the March 2012 claims of physical and sexual abuse. Thus, summary judgment in those defendants' favor is appropriate with regard to those claims. As Plaintiff does not allege Wojciechowicz participated in the alleged retaliation or denial of medical care, (*see* SAC ¶¶ 124-26; Interrogatories ¶¶ 2, 4), he shall be dismissed from the case.

The DOC Defendants also move for summary judgment on the grounds that Plaintiff has not carried his burden of proof in establishing the March 2012 physical and sexual abuse. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden on the moving party may be discharged by 'showing' . . . there is an absence of evidence to support the nonmoving party's case."). The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In an excessive force claim under the Eighth Amendment, the inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010). "Thus, courts considering a prisoner's claim must ask

both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)). The DOC Defendants argue Plaintiff cannot prove either the subjective or the objective component.

Defendants assert Plaintiff has failed to produce any evidence of injury in support of his claims of physical abuse, noting that he refused medical evaluation on March 10 and 11, 2012, and showed no sign of physical injury on those dates. (DOC SOF ¶¶ 10; DOC brief at 19-20). As this Court previously noted, evidence that Plaintiff was "medically cleared" on March 10 and 11 has no relevance to Plaintiff's physical state after an alleged beating took place on either March 13 or 14. (Slip Opinion at 34). *See also Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002)("[T]he Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries."); *accord Wilkins*, 559 U.S. at 40 n.2 (citing *Mensinger*).

That being said, in order to survive a motion for summary judgment after the moving party has demonstrated there is a lack of evidence supporting an essential element of the claim, "'the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial' and do more than

20

'simply show that there is some metaphysical doubt as to the material facts.'" *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted)); *see also* Fed. R. Civ. Pro. 56(c)(1)(B). In its March 30, 2015 summary judgment opinion, the Court noted that "Plaintiff has set forth no admissible evidence regarding the DOC Defendants' direct involvement other than his answers to interrogatories. Without more, Plaintiff's unsupported claims that the DOC Defendants either participated in, knew of, or ordered the abuse cannot withstand summary judgment." (Slip Opinion at 35).

At the time of the previous summary judgment motions, however, the DOC Defendants were subject to a spoliation inference that served as evidence that could discredit their version of the events on March 10 and the subsequent investigation if accepted by a factfinder. On that record, there was more than just a theoretical issue of material fact. The spoliation inference has been lifted by Magistrate Judge Williams,[4] however, and is no longer applicable on summary judgment. Plaintiff has not submitted any other evidence to

---

[4] Plaintiff did not appeal the magistrate's ruling to this Court. *See* Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)

support his claims of a cover-up;[5] thus, there is no factual

support for an inference that the failure to preserve the video

was intentional or in bad faith, or that the video would

undermine defendants' evidence. *See Halsey v. Pfeiffer*, 750 F.3d

273, 287 (3d Cir. 2014).

Aside from Plaintiff's deposition testimony, the record

remains virtually the same from the record before the Court in

March 2015. The addition of the testimony does not change the

Court's previous analysis as the Third Circuit has extended the

rule on self-serving interrogatory answers to deposition

testimony. *See Irving v. Chester Water Auth.*, 439 F. App'x 125,

127 (3d Cir. 2011). One self-serving piece of evidence supported

only by another self-serving piece of evidence does not suffice

to raise a genuine issue of material fact. A reasonable juror

considering those evidentiary items against the remainder of the

record, such as the results of the SID investigation and

accompanying affidavits, (SID Report, Docket Entry 339-2), could

not credit Plaintiff's testimony. The DOC Defendants are

---

[5] Plaintiff states that he intends to call witnesses to testify
that "Ms. Kim and Mr. Miller had Investigator Harrison spoliate
the video footage of the March 10th incident in question to
protect the Defendants from liability." (Plaintiff's Brief at 2-
3). The Court cannot consider any hypothetical testimony as
there are no affidavits from these anticipated witnesses setting
forth the relevant facts to which they would testify. Fed. R.
Civ. P. 56(c)(1)(A).

therefore entitled to summary judgment on Plaintiff's claims of physical and sexual abuse.

**B. Major Keil**

Major Keil argues he is entitled to judgment as a matter of law as there is no evidence supporting Plaintiff's allegations other than the general allegations made in Plaintiff's answers to interrogatories. (Docket Entry 340-2 at 9). The Court agrees, and summary judgment must be awarded to Major Keil on all remaining claims as no reasonable juror could find in favor of Plaintiff.

In support of his motion, Major Keil has submitted a certification stating he was not stationed at NJSP at the time of the alleged abuse, denial of medical care, or retaliation against Plaintiff as he left that position on December 3, 2011. (Keil Certification, Docket Entry 340-3 ¶¶ 3, 5). He denies having any personal knowledge of the incidents and personally participating in any abuse of Plaintiff. (Id. ¶¶ 6-8). He further denies directing others to abuse Plaintiff in any manner. (Id. ¶¶ 9-10). Major Keil also submits a transcript of Plaintiff's February 27, 2013 deposition in support of his motion. (Deposition Transcript, Docket Entry 340-5).

The only evidence of Plaintiff's allegations against Major Keil are his conclusory statements in his interrogatories, wherein he accuses Major Keil of having "personal or actual

knowledge concerning [Plaintiff's] ongoing physical abuse,"
(Interrogatories ¶ 2), and being among those who "instructed or
directed" the abuse and retaliation, (Id. ¶ 4). As previously
noted, unsupported, self-serving statements in interrogatories
are not enough to withstand summary judgment. *Gonzalez v. Sec'y
for the Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir.
2012). Accepting as true Major Keil's uncontested statements
that he was not stationed at NJSP during the relevant time
period, L. Civ. R. 56.1(a), there is no reasonable basis for an
inference that he ordered or directed the physical and sexual
abuse of Plaintiff. Furthermore, Plaintiff's deposition
testimony contradicts Plaintiff's interrogatory answers that
implicate Major Keil in the denial of medical care and
retaliation that allegedly followed the assaults.[6]

Plaintiff testified that Officer Ralph told him "her good
friends told her to sanction [him]." (Deposition Transcript
96:24-25). When asked to provide the names of those "good
friends," Plaintiff responded: "Holmes. Now that's another name,
too. Now that's the name that came to me. He was one of the ones
who would make rounds on the unit. Holmes, Barnes, Ricci and

---

[6] The interrogatory answers are also contradicted by Plaintiff's
concession at the April 9, 2015 oral argument on the spoliation
sanction that the second amended complaint does not assert these
claims against Major Keil. (Oral Argument Transcript, Docket
Entry 327-2 at 14:1-6).

[Officer Ralph's] friends at DOC." (Id. at 98:7-10). Plaintiff later identified the "friends at DOC" as "Raupp, Ricci, Barnes, Moleins, Holmes." (Id. at 98:12). Plaintiff did not mention Major Keil's name at all during his deposition. (Id. at 183).

No reasonable jury could find Major Keil liable on any of the remaining claims against him on the record before the Court. He is therefore entitled to judgment as a matter of law and shall be dismissed from the case.

**V.    CONCLUSION**

For the reasons stated above, the DOC Defendants' motion for summary judgment on Plaintiff's physical and sexual abuse claims (Docket Entry 339) is granted, and Wojciechowicz is dismissed from the case. Major Keil's motion for summary judgment (Docket Entry 340) is granted, and he is dismissed from the case. An accompanying Order will be entered.


<u>    March 29, 2016    </u>                    <u>    s/ Jerome B. Simandle    </u>
Date                                            JEROME B. SIMANDLE
                                                Chief U.S. District Judge

25